Albert R. VARHOLA; Joseph Bradshaw; Curtis Darnell; Carlos E. Elrod; Frank P. Iovino; E. Jack Maynard; Curtis W. Phipps; Teresa Price, Executrix of the Estate of Earl Price, deceased; Stephen E. Sexton; William Vanderpool; Leslie L. Wilson; Claude Wright, Plaintiffs-Appellees, Cross-Appellants,

v.

John DOE, et al., Defendants,

Cyclops Corporation; Pension Plan for Salaried Employees of Cyclops Corporation; William D. Dickey; Robert A. Kushner; Donald E. Mitchell; Program of Hospital Medical Benefits for Eligible Pensioners and Surviving Spouses of Cyclops Corporation—Salaried Employees, Defendants-Appellants, Cross-Appellees.

Nos. 85–4057, 86–3021.

United States Court of Appeals, Sixth Circuit.

Argued March 31, 1987.

Decided June 22, 1987.

---

Jack F. Fuchs, Daniel O. Berger, Paxton & Seasongood, Cincinnati, Ohio, Donald E. Seymour, argued, Kirkpatrick & Lockhart, Pittsburgh, Pa., for defendants-appellants, cross-appellees.

Don Aspaugh, Columbus, Ohio, Richard C. Graham, argued, Isaac, Brant, Ledman & Becker, Paul H. Tobias, Tobias & Kraus, Cincinnati, Ohio, for plaintiffs-appellees, cross-appellants.

Pension Benefit Guar. Corp., Edward R. Mackiewicz, Robert Furst, Roger J. Lerner, Legal Dept., Washington, D.C., Chamber of Commerce of the United States, William F. Hanrahan, E. Calvin Golumbic, Arent, Fox, Kintner, Plotkin & Kahn, Washington, D.C., amicus curiae in support of defendants-appellants.

United Steelworkers of America, William T. Payne, Asst. Gen. Counsel, Pittsburgh, Pa., amicus curiae in support of plaintiffs-appellees.

Before KEITH, KENNEDY and RYAN, Circuit Judges.

CORNELIA G. KENNEDY, Circuit Judge.

Defendants [1] appeal and plaintiffs cross-appeal the summary judgment for plain-

---

1. The defendants in the court below were the Pension Plan for Salaried Employees of Cyclops

tiffs in this action involving pension liability under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* We hold that the "arbitrary and capricious" standard of review applies to decisions by plan administrators to deny benefits to particular claimants. Because we find that there are factual issues which need to be resolved, we remand this case to the District Court for determination as to whether the plan administrator in this case acted arbitrarily and capriciously in denying "shutdown pensions" to plaintiffs. We affirm the District Court's rulings that there is no evidence that defendants engaged in unlawful discrimination in violation of 29 U.S.C. § 1140 and that plaintiffs are not entitled to punitive or compensatory damages. We express no opinion on the other issues raised by the parties, but rather remand those issues to the District Court for further proceedings.

## I.

Cyclops Corporation ("Cyclops") is engaged, among other things, in the production of steel. Before November 22, 1980, Cyclops owned and operated steel-making and related production facilities near Portsmouth, Ohio ("the Portsmouth facility"). This facility included an operating coke plant, blast furnace, and open hearth furnaces. The twelve plaintiffs in this case were salaried employees of Cyclops and worked at the Portsmouth facility.

In early 1980, Cyclops decided to close down its operations at the Portsmouth facility. After failing to sell the entire facility as a "going concern," it shut down the blast furnace and open hearth furnaces completely, but continued the coke plant operations until August while attempting to find a buyer for the coke plant as a "going concern." On August 25, 1980, the coke ovens were put into a "hot idle" condition, which means that production was stopped but that the temperature of the ovens was maintained, since cooling would damage the refractory lining of the ovens. Although Cyclops ceased producing coke at the coke plant on this date, plaintiffs' employment with Cyclops was not interrupted. On November 21, 1980, Cyclops sold the coke plant assets to New Boston Coke Corporation ("New Boston"), which was then a wholly-owned subsidiary of McLouth Steel Corporation. (The remaining land and buildings at the Portsmouth facility were sold to an unrelated purchaser.) All of the stock of New Boston is now held by a Trustee in Bankruptcy appointed by the United States Bankruptcy Court for the Eastern District of Michigan.

Cyclops had a pension plan in effect for its salaried employees as of November, 1980 ("the Salaried Plan"). Among the special retirement benefits were the "70/80 Retirement" and the "Rule of 65 Retirement" provisions,[2] which provide acceler-

---

Corporation, the three individual members of the Plan's Pension Board, which is the "plan administrator" under ERISA, the Program of Hospital-Medical Benefits for Eligible Pensioners and Surviving Spouses of Cyclops Corporation, and Cyclops Corporation. All but Cyclops Corporation are appellants in this matter. Cyclops Corporation is the cross-appellee in the cross-appeal.

2. These provisions provide, in pertinent part:

**4.7   70/80 Retirement**
    Any Participant who has at least 15 years of continuous service and has not attained age 62 but (i) has attained age 55 and whose combined age and years of continuous service equal 70 or more, or (ii) whose combined age and years of continuous service equal 80 or more, and
    (a) whose continuous service is broken by reason of a permanent shutdown of a divi-

sion, plant, office or department, or subdivision of any of them ...

.    .    .    .    .

shall be eligible to retire on or after the Effective Date [January 1, 1976] and shall upon his retirement ... be eligible for a pension.
Joint Appendix at 122–23.
    **4.8   Rule of 65 Retirement**
    Any participant (i) who has at least 20 years of continuous service as of his last day worked (provided said last day worked is on or after January 1, 1978), (ii) whose combined age and years of continuous service equal 65 or more, and (iii) whose continuous service is broken because of
    (a) a permanent shutdown of a division, plant, office or department, or subdivision of any of them,

.    .    .    .    .

and who has not been offered a transfer to another location, shall be eligible to retire on

ated pension benefits to participants whose continuous service is broken because of certain events, including "a permanent shutdown of a division, plant, office or department, or subdivision of any of them," provided that their years of service and age meet the requirements of the Plan ("shutdown pensions"). These provisions allow an eligible participant to receive a full retirement benefit, payable immediately upon the shutdown. The parties do not dispute that each of the twelve plaintiffs would qualify for one of the two retirement plans if his continuous service had been broken by a permanent shutdown of a division, plant, office, or department. Eligible Cyclops employees whose employment with Cyclops was terminated because of the shutdown of the open hearth and the blast furnace operations were granted plant shutdown pensions.

However, New Boston wanted experienced workers to run the coke operations. Cyclops provided it with a list of twenty-eight salaried employees, who were designated to work for New Boston following the sale. Each of the plaintiffs was on this list. Plaintiffs were told that if they refused to work for New Boston they would not receive shutdown pensions, but would be eligible only for deferred vested pensions upon reaching normal retirement age. Each of the plaintiffs went to work for New Boston.

As part of the sales agreement, New Boston agreed to assume all accrued (vested and unvested) pension liabilities of the twenty-eight employees, and Cyclops agreed to transfer $60,521 in trust assets from the Salaried Plan to the trustee of the plan which New Boston agreed to develop.

After the Pension Board denied plaintiffs' applications for shutdown pensions, plaintiffs filed suit in the United States District Court for the Southern District of Ohio, alleging sixteen counts in their Amended Complaint. Five counts were dismissed by a Joint Stipulation of the parties on July 29, 1985. The remaining eleven counts were submitted to the court below

on cross-motions for summary judgment after the parties entered into a Fact Stipulation and separate Document Stipulations. The District Court issued an Order on November 26, 1985, granting plaintiffs' motion with respect to Count Two (entitlement to shutdown pensions) and Count Ten (entitlement to participation in the Medical Program coinciding with the Count Two pension benefits). The Order granted defendants summary judgment on all remaining counts.

Defendants appeal the District Court's Order with respect to Counts Two and Ten. Defendants concede that the result in Count Ten follows necessarily from the result in Count Two, and so present only Count Two for review. Plaintiffs cross-appeal from the District Court's judgment for defendants on the remaining nine counts.

## II.

The first issue raised by the parties on appeal is a procedural one: what is the standard of review applicable under ERISA to decisions by plan administrators to deny benefits to particular claimants? Defendants argue that the court can look only to see whether the administrator's decision was "arbitrary and capricious." Plaintiffs contend that a stricter standard of review should be applied. They argue that it is inconsistent to apply the arbitrary and capricious standard when ERISA specifically imposes upon plan administrators a fiduciary duty to act "solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits" to such parties "in accordance with the documents and instruments governing the plan...." 29 U.S.C. § 1104(1)(A) and (D). Plaintiffs contend that where, as here, they are essentially suing on a contract they should not have to overcome the heavy burden imposed upon them by the use of such a deferential standard. Further, they argue, the arbitrary and capricious standard is particularly inappropriate to the Salaried Plan because the plan administrator—the Pension Board—consists of three

or after January 1, 1978, and shall upon his retirement ... be eligible for a pension.

Joint Appendix at 123.

Cyclops executives. Plaintiffs assert that Cyclops will benefit from the denial of retirement benefits to plaintiffs, and that the Board thus suffers from an inherent conflict of interest.

This Court has in the past applied an "arbitrary and capricious" standard to the review of decisions by plan administrators under ERISA to deny benefits to particular claimants. *See Moore v. Reynolds Metals Co. Retirement Program for Salaried Employees,* 740 F.2d 454, 457 (6th Cir. 1984), *cert. denied,* 469 U.S. 1109, 105 S.Ct. 786, 83 L.Ed.2d 780 (1985) ("[R]eview ... is limited to a determination of whether the trustees' actions in administering or interpreting a plan's provisions are arbitrary and capricious."); *Van Gunten v. Central States, Southeast & Southwest Areas Pension Fund,* 672 F.2d 586, 587 (6th Cir. 1982). In fact, this Court has already applied this standard of review to this very Plan. *See Cook v. Pension Plan for Salaried Employees of Cyclops Corp.,* 801 F.2d 865, 869–870 (6th Cir.1986).

Plaintiffs argue that *In re White Farm Equip. Co.,* 788 F.2d 1186 (6th Cir.1986), overruled *sub silencio* earlier cases employing the arbitrary and capricious standard. This assertion is incorrect. *White Farm* involved an employer in bankruptcy who, under the process of reorganization in bankruptcy, attempted to terminate certain insurance benefits under a welfare benefit plan for retired employees. The issue presented on appeal was "whether under ERISA an employer may lawfully exercise a reserved power to terminate an employee welfare benefit plan for retired nonunion employees." 788 F.2d at 1190. The Court looked to rules of contract construction in resolving this issue. It did not decide what standard of review would apply to a decision by a plan administrator to deny benefits to employees who allegedly were qualified.

■ Thus, our earlier decisions establishing the arbitrary and capricious standard still control. This standard derives from the standard of review applied to union-ne-gotiated pension trusts under section 302(c)(5) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 186(c)(5).

> That section imposes a duty of loyalty on section 302 trustees by permitting employer contributions to a welfare trust fund only if the contributions are used "for the sole and exclusive benefit of the employees...." Section 1104 of ERISA imposes a similar duty of loyalty and not surprisingly the courts have applied the "arbitrary and capricious" standard under ERISA as well.

*Struble v. New Jersey Brewery Employees' Welfare Trust Fund,* 732 F.2d 325, 333 (3d Cir.1984) (citation omitted).

Unlike ERISA, however, section 302 mandates that the pension fund be administered jointly by an equal number of employer- and employee-appointed trustees. *See* 29 U.S.C. § 186(c)(5)(B). Were we writing on a clean slate, we might well be persuaded that stricter standard of review should apply to decisions by plan administrators of employer-controlled plans established under ERISA to deny benefits to particular claimants than to similar decisions by administrators of pension funds under section 302 of the LMRA. However, despite the many arguments that can be made about the inappropriateness of applying the arbitrary and capricious standard to ERISA plans,[3] the law is well-settled. We can find no law to support the distinction plaintiffs urge upon us. Thus, we hold that the arbitrary and capricious standard applies to decisions by plan administrators under ERISA to deny benefits to particular claimants.

### III.

On the merits, defendants contend that the District Court erred in finding that plaintiffs were entitled to shutdown pensions as a result of a "permanent shutdown" of the coke plant. We find that although the District Court articulated the correct standard of review, it applied the standard incorrectly. Because there are

---

**3.** *See generally* Note, *Judicial Review of Fiduciary Claim Denials Under ERISA: An Alternative to the Arbitrary and Capricious Test,* 71 Cornell L.Rev. 986 (1986).

factual issues unsuitable for summary judgment involved, we remand this issue to the District Court for further proceedings.

Sections 4.7 and 4.8 of the Salaried Plan provide for accelerated retirement benefits to employees whose continuous service is broken by reason of a permanent shutdown. Section 10.1 of the Plan provides that: "The term 'continuous service' as used in the Plan means service with the Company ..., whether on a salaried or hourly basis...." Joint Appendix at 139. As defined in section 10.1(e), "[a]n Employee shall incur a break in continuous service upon: ... (4) termination due to permanent shutdown of a division, plant, office or department, or subdivision of any of them...." Joint Appendix at 139. "Company" is defined in section 1.1(f) of the Plan as "Cyclops Corporation, a Pennsylvania corporation, and any successor to it in ownership of substantially all its assets...." Joint Appendix at 119. (New Boston was not a "successor" to Cyclops within the meaning of the Plan, since it purchased only the coke ovens, not "substantially all" of Cyclops' assets.)

None of the parties dispute that the plaintiffs have suffered a break in continuous employment. Rather, they are arguing over whether this break resulted from a "permanent shutdown" of the coke plant so as to trigger the accelerated benefit provisions.

The District Court began by articulating the correct standard of review. Rather than examining the administrator's interpretation of the Plan provisions to see whether that interpretation was arbitrary and capricious, however, the District Court interpreted the provisions itself:

The Court finds that the pension board's interpretation of the plan was arbitrary and capricious in finding that plaintiffs were not entitled to "shutdown benefits." The Salaried Pension Plan is clear and unambiguous. The plain and unambiguous language of the plan results in a mandated determination that the plaintiffs have met the conditions of eligibility to retire under Section 4.7 and/or 4.8 of the Plan.

The stipulated facts disclose that plaintiffs have the requisite ages and years of service with Cyclops, and that the coke works was permanently shutdown by Cyclops. It is the *opinion of this Court that* by the sale of the coke works to a stranger who is not a successor corporation under the terms of Sec. 1.1(f), Cyclops permanently shutdown the coke works as contemplated in the Salaried pension plan, particularly, as plaintiffs were not offered a transfer to another location owned and operated by Cyclops or its wholly-owned subsidiary or were not given the opportunity to consent to the new plan with the stranger employer. The plaintiffs have thus met the qualifications necessary to retire under the plan.

The unambiguous terms of the Salaried Plan provide that any participant is entitled to retire if there is a permanent shutdown by Cyclops, and the participant meets the other requirements of the Plan. Here, there was a permanent shutdown of the coke works by Cyclops. Cyclops, *from its point of view*, permanently shutdown the coke plant by selling the plant. Cyclops no longer owns the plant, and therefore it can no longer operate or run the plant. Additionally, plaintiffs were not offered a transfer to another location *within Cyclops*. Finally, no attempt was made to secure the voluntary agreement of the plaintiffs to transfer to the stranger company. Rather, they were forced to transfer or face economic disaster. The plan paragraphs in issue only involve the relationship of Cyclops to its salaried employees, and when Cyclops permanently shutdown its facility, the clauses protected the plaintiffs.

Joint Appendix at 402–03 (emphasis in original).

The parties present numerous arguments to us as to whether or not the sale of the coke ovens to New Boston constituted a "permanent shutdown" so as to trigger the provisions in the Salaried Plan for shut-

down pensions.[4] Defendants argue that while part of the Portsmouth facility (the blast furnace and open hearth furnaces) was shut down, the coke ovens were not, and that plaintiffs therefore were not entitled to shutdown pensions. They contend that "shutdown" must be given its literal, dictionary definition, and so must refer to an absolute "closing" of the plant, and not to a "sale." Plaintiffs, on the other hand, contend that the plant cannot be "shut down" as to some employees, but not as to others. They assert that the District Court was correct in finding that "permanent shutdown" must be defined in terms of Cyclops' operation of the coke works, rather than in terms of the physical operation of the works.

This Court's duty is not to evaluate the merits of the parties' opposing interpretations of the Salaried Plan's provisions. Rather, we must determine whether the *plan administrator* acted arbitrarily and capriciously in denying plaintiffs shutdown pensions. We find, however, that the record is virtually silent as to the plan administrator's reasons for denying plaintiffs these benefits. We have no evidence of any formal decision reached by the Pension Board regarding this matter or the interpretation it applied in making its decision. We cannot tell whether the Board's determination resulted from a deliberate, principled reasoning process on its part, or whether the denial of shutdown pensions to plaintiffs resulted from the Board's inaction or failure to expressly consider whether plaintiffs' status was different from that of other Portsmouth employees granted such pensions. Therefore, we have no basis for determining whether the Board acted arbitrarily and capriciously in denying plaintiffs shutdown pensions.

In seeking summary judgment, defendants argued that the Pension Board's decision to deny shutdown pensions to plaintiffs "reflected a deliberative process" which led to a determination "that the sale of the Portsmouth coke plant and concomitant transfer of the Plaintiffs to New Boston without interruption of their performance of work duties did not constitute a break in continuous service by reason of a permanent shutdown." Brief in Support of Defendants' Motion for Summary Judgment at 14. Defendants cited three documents in support of this assertion. The first, Document No. 633, is a September 29, 1982 letter from the personnel manager, Doyle E. Mutti, to plaintiff Darnell. Leaving aside the question of the relevancy of the statements of a non-member of the Board on the issue at hand, Mutti's letter does not reveal the Board's thinking on the matter, but simply states that because the New Boston plan was considered to be a successor to the Salaried Plan, Darnell's "continuous service with Cyclops was not deemed to be broken upon [his] transfer." Joint Appendix at 293. Defendants have since conceded that the termination of plaintiffs' employment with Cyclops *did* constitute a break in continuous service, however. Defendants' Memorandum Contra Plaintiffs' Cross-Motion for Summary Judgment at 9. Document No. 636 is a letter from Cyclops' attorney to Robert Kushner, a member of the Pension Board, dated December 20, 1982. This letter does interpret the Salaried Plan's shutdown provisions, and concludes that plaintiffs are not entitled to shutdown benefits. We do not know whether the Board adopted the interpretation set forth in this letter. Moreover, it appears that the Board received this letter after it made its original decision to deny shutdown pensions to plaintiffs. Document No. 635 is a letter

---

**4.** In reaching our decision, we disregard the extensive discussion by Amicus Curiae United Steelworkers of America, AFL–CIO: CLC, of the bargaining history of the "permanent shutdown" provision in its union contracts. This theory was not presented to the District Court and so is not properly made to this Court on appeal. Cf. *Wright v. Holbrook,* 794 F.2d 1152, 1157 (6th Cir.1986) (citation omitted) ("It is fundamental that 'parties cannot ... advance new

theories or raise new issues in order to secure a reversal of the lower court's grant of summary judgment."); *Russ' Kwik Car Wash, Inc. v. Marathon Petroleum Co.,* 772 F.2d 214, 217 (6th Cir.1985) (citation omitted) ("The rule that this Court will not consider questions not presented below 'applies with particular force when the new issue requires development of additional facts.' ").

from Kushner to plaintiffs' attorney, dated December 21, 1982. This letter contains only the curt statement that plaintiffs were denied shutdown pensions because the coke battery was not shut down, citing sections 4.7(a) and 4.8(a) of the Plan. Joint Appendix at 297.

The question of the Board's interpretation of the shutdown provisions of the Salaried Plan is made even more cogent by plaintiffs' allegation that they were treated differently than other similarly-situated workers. According to the parties' stipulations, plaintiffs Sexton, Elrod, and Maynard were employed by Cyclops as Superintendent, Assistant Superintendent, and Mobile Equipment Repair Foreman, respectively, in the Yard and Transportation Department. Plaintiff Price was a Maintenance Foreman and plaintiff Varhola was Manager of Industrial Relations. Joint Appendix at 61. Thus, these plaintiffs were not formally assigned to the coke ovens, although they apparently performed most, if not all, of their duties there. Plaintiff Varhola alleged in an affidavit that three other employees who performed functions similar to those of plaintiffs were granted shutdown pensions. Two of these employees—Allard Lawson, who had been a Turn Foreman in the Maintenance Department, and John R. Dalton, who had been a General Foreman in the Maintenance Department—allegedly performed all of their duties solely in the coke plant. The third, Donald Pitts, had been a Foreman over Fuel and Utilities in the Maintenance Department, and allegedly worked solely in the steam plant, which was sold with the coke plant to New Boston. Joint Appendix at 75.

■ We cannot determine from the record whether these three employees were indeed similarly-situated to at least some of the plaintiffs. If they were, however, absent some reasonable explanation for the differing treatment, we believe that it would be arbitrary and capricious to grant

these workers shutdown pensions, but not grant plaintiffs the same.

Because we are uncertain as to what the Board actually decided, what the Board's motivation for its decision was, and why it granted some workers shutdown pensions while denying others similarly-situated the same benefits, we cannot tell whether the Board's decision was arbitrary and capricious. Therefore, we remand this issue to the District Court for further proceedings.

## IV.

Plaintiffs raise several issues on cross-appeal, which we now address.

First, plaintiffs alleged in their Amended Complaint that defendants were guilty of discrimination and interference with rights protected under ERISA, in violation of 29 U.S.C. § 1140,[5] because they denied pensions to plaintiffs, but granted them to other workers similarly-situated. The District Court granted summary judgment to defendants on this issue, stating: "The record contains no material facts to support a finding that any unlawful discrimination took place." Joint Appendix at 404.

■ Plaintiffs offer little support for their contention that the District Court erred. They argue solely that while other Portsmouth employees, including coke oven employees, were allowed to retire with shutdown pensions, plaintiffs were required to work for New Boston and were denied such benefits. While that may not be fair we do not believe that it constitutes a discriminatory action under section 1140. This Court discussed the meaning and legislative history of the prohibitions in section 1140 in *West v. Butler*, 621 F.2d 240, 245 (6th Cir.1980), noting that: "The legislative history reveals that the prohibitions were aimed primarily at preventing unscrupulous employers from discharging or harassing their employees in order to keep them from obtaining vested pension rights." Plaintiffs can point to no evidence

---

**5.** This section provides in pertinent part:
   It shall be unlawful for any person to ... discriminate against a participant or a beneficiary ... for the purpose of interfering with

the attainment of any right to which such participant may become entitled under the plan....
29 U.S.C. § 1140.

that Cyclops deliberately discriminated against these employees for the purpose of interfering with their rights under the Salaried Plan. Thus, we affirm the District Court's judgment on this issue.

Second, plaintiffs argue that the District Court erroneously granted summary judgment to defendants with regard to plaintiffs' request for punitive and compensatory damages. The District Court stated: "Plaintiffs' request for compensatory damages and punitive damages is not supported. The record reveals that plaintiffs are entitled to 'shutdown' pensions and medical benefits flowing therefrom. Plaintiffs are not otherwise damaged." Joint Appendix at 404–05. The District Court further found that "[n]owhere in the record is there any evidence which could reasonably be found to be outrageous conduct on the part of defendants," Joint Appendix at 405, so as to warrant imposition of punitive damages.

Although on remand plaintiffs might show that they are entitled to shutdown pensions, they have not alleged any fact which would entitle them to other compensatory damages. We need not address the District Court's finding that defendants' conduct did not warrant imposition of punitive damages, since we find that, as a legal matter, punitive damages are unavailable to plaintiffs.

■ To the extent, if any, that plaintiffs base their claim on state law, they clearly are not entitled to such damages. The Supreme Court recently held in *Pilot Life Ins. Co. v. Dedeaux*, —— U.S. ——, ·107 S.Ct. 1549, 1555, 95 L.Ed.2d 39 (1987), that ERISA's civil enforcement remedies are exclusive and so preempt state law remedies.

Nor are plaintiffs entitled to punitive damages under ERISA. In *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985), the Supreme Court held that section 409(a) of ERISA, 29 U.S.C. § 1109(a) (establishing liability for breach of fiduciary duty by plan administrators), does not permit recovery of extra-contractual damages by a beneficiary of a plan. Although the Court specifically declined to decide whether puni-

tive damages are recoverable under section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3) (permitting a plaintiff to obtain "other appropriate equitable relief"), *see* 473 U.S. at 139 n. 5, 105 S.Ct. at 3089 n. 5, its statements in *Pilot Life* persuade us that it will hold they are not. It treats the statutory scheme of ERISA as one which does not intend to provide for punitive damages.

This Circuit has not yet addressed this issue. However, the Courts of Appeals which have passed on it have concluded that the statutory language and legislative history of section 502(a)(3) of ERISA prohibit recovery of punitive damages. *See Kleinhans v. Lisle Sav. Profit Sharing Trust*, 810 F.2d 618 (7th Cir.1987); *Sommers Drug Stores Co. Employees Profit Sharing Trust v. Corrigan Enterprises, Inc.*, 793 F.2d 1456, 1464–65 (5th Cir.1986), *cert. denied*, —— U.S. ——, 107 S.Ct. 884, 93 L.Ed.2d 837, and —— U.S. ——, 107 S.Ct. 1298, 94 L.Ed.2d 154 (1987); *Powell v. Chesapeake & Potomac Tele. Co.*, 780 F.2d 419, 424 (4th Cir.1985), *cert. denied*, —— U.S. ——, 106 S.Ct. 2892, 90 L.Ed.2d 980 (1986), *Dependahl v. Falstaff Brewing Corp.*, 653 F.2d 1208, 1216 (8th Cir.) (dictum), *cert. denied*, 454 U.S. 968, 102 S.Ct. 512, 70 L.Ed.2d 384, and 454 U.S. 1084, 102 S.Ct. 641, 70 L.Ed.2d 619 (1981). As the *Sommers* court noted, punitive damages ordinarily are not available under trust law in an action for a breach of a trustee's fiduciary duty. *Sommers*, 793 F.2d at 1463. "Because Congress intended the interpretation of ERISA to be guided by principles developed under the law of trusts, absent express language to the contrary in the statute, we will not interpret ERISA to provide punitive damages for breach of a trustee's fiduciary obligations where such damages are not generally available under the law of trusts." *Kleinhans*, 810 F.2d at 627. We agree with the Fourth, Fifth, Seventh, and Eighth Circuits, and hold that punitive damages are not recoverable under section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3).

■ Third, plaintiffs contend that the District Court erred in finding that defend-

ants did not violate 29 U.S.C. § 1106 when they transferred trust assets from the Salaried Plan to New Boston's plan. Section 1106(a)(1)(D) prohibits a plan fiduciary from causing the plan to engage in a transaction which he knows or should know constitutes a direct or indirect use of the plan assets for the benefit of a party in interest. If on remand the District Court determines that plaintiffs were entitled to shutdown pensions, this issue will be resolved. If the Court finds that plaintiffs were not entitled to such pensions, however, then defendants' transfer of the assets was a purely ministerial act which would not give rise to liability under this section.

In view of our remand for factual determinations, we express no opinion on plaintiffs' two remaining allegations of error. The District Court granted summary judgment to defendants on plaintiffs' request for severance pay, noting that "plaintiffs admit in their Brief in Opposition to Defendants' Motion for Summary Judgment at 26, that if they prevail on their claims for Rule of 65 and 70/80 benefits, they are not entitled to severance pay." Joint Appendix at 404.[6] It thus did not pass on whether plaintiffs were entitled to severance pay if they did not receive shutdown pensions. If it is determined on remand that plaintiffs are entitled to plan shutdown pensions, the District Court will not need to address this issue. If plaintiffs are not entitled to such benefits, however, the District Court should pass on this issue in the first instance.

Plaintiffs also alleged that Cyclops' Director of Corporate Insurance represented to them that if McLouth went bankrupt within five years after the sale, all of them would revert to the Salaried Plan. The District Court granted summary judgment to defendants on this issue, noting:

> Cyclops is obligated under the Salaried Plan to plaintiffs for full immediate pension benefits on a plant shutdown basis as of November 21, 1980, which includes medical insurance benefits. Consequent-

ly, defendants will have discharged their duties under ERISA. Cyclops' guarantee of benefits is therefore fulfilled by payment of the pension.

Joint Appendix at 406. If on remand it is decided that plaintiffs are not entitled to shutdown pensions, this factual dispute will have to be resolved.

## V.

Accordingly, we AFFIRM the District Court's judgment in part, and REMAND the case for further proceedings consistent with this opinion.

---

**6.** Under Cyclops' severance pay policy:
  1.2 An employee is not eligible for a severance allowance if he is terminated under any of the following conditions:

1.2.3 Retirement under company plan other than a deferred vested pension.
Joint Appendix at 155.