837 F.2d 475
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Elmer G. DOUGLAS; Emerson Schmidt; George Freihoffer;
Harold McConnaha; Dale Senter; Richard W. Williams; Willy
Flohr; Richard R. Varmander; Berlin Kauffman; Jack Shade;
Isabelle Solli; James R. Coggin; Carl Arnold, Plaintiffs-Appellants,
v.
The BENDIX CORPORATION; the Salaried Employees Pension Plan
of the Bendix Corporation; the Separation Allowance for
Salaried Employees Plan of the Bendix Corporation; the
Allied Corporation, Defendants-Appellees.
 No. 87-3201.
 United States Court of Appeals, Sixth Circuit.
 Jan. 26, 1988.
 
 Before DAVID A. NELSON and BOGGS, Circuit Judges, and ALLEN, Senior District Judge.*
 PER CURIAM.
 
 
 1
 Thirteen former salaried employees of the Bendix Corporation appeal the district court's decision granting summary judgment in favor of defendants, the employees' former employer and former employee benefits plans, on the employees' claims for employment benefits and breach of contract damages. We agree with the district court that the plan administrator's denial of benefits to these employees was not arbitrary and capricious, and that the employees' claim of detrimental reliance is not sustainable. Accordingly, we affirm the entry of summary judgment in favor of the defendants.
 
 
 2
 * On April 19, 1984, the Bendix Corporation sold its Sheffield Automation and Measurement Division in Dayton, Ohio, to the Cross & Trecker Corporation. Cross & Trecker offered salaried employees at the Sheffield Division their same jobs at the same location and salaries. Bendix retained responsibility for accrued pension benefits earned prior to the sale. Bendix also agreed to preserve benefits earned as of the sale date by vested employees not eligible for early retirement, and to pay those benefits when an employee reached age 65 or, if an employee elected, to pay the benefits on a reduced basis beginning when the employee was between the ages of 55 and 65. Cross & Trecker agreed to provide a new pension plan for all salaried employees accepting employment with it based on an individual employee's length of service with Cross & Trecker from the date of the sale.
 
 
 3
 At the time of the sale, Bendix's salaried pension plan defined how employees leaving Bendix would be categorized for the purposes of receiving termination benefits. Under the plan, "a separation initiated by, and voluntary on the part of the employee," was classified as a "Quit". If an employee was separated involuntarily from Bendix because of "a reduction in personnel, declining business, discontinuance of operations or location closings," the employee would be treated as having left Bendix as part of a "Reduction in Force" (RIF). However, if an employee refused an offer of employment from a successor employer paying the same salary Bendix paid the employee at the time the employee left Bendix, the employee would be classified as a quit and not as a RIF.[1]
 
 
 4
 RIF employees were eligible for separation benefits under Bendix's benefits plan. In addition, if a RIF employee was within three years of eligibility for Bendix's 80-point early retirement benefits,[2] the RIF employee was entitled to receive "a bridging leave of absence" from the time of termination for the period necessary to attain the 80-point benefits. Quit employees were ineligible for either separation or bridging termination benefits.
 
 
 5
 Before the sale to Cross & Trecker was completed, the thirteen employees in this action each requested and were refused separation benefits and bridging leaves of absence. The employees contend they were told by David Hoehn, the Manager of Salaried Personnel at the Sheffield Division, that they would be eligible for the bridging leaves of absences after the sale to Cross & Trecker was completed.[3]
 
 
 6
 Subsequently, the employees each accepted employment with Cross & Trecker and, after the sale was finished, again requested separation benefits and bridging leaves of absence from the Bendix plan. Their requests were denied by the Bendix plan administrator in a letter dated April 29, 1985. The letter explained that the employees were ineligible for the benefits because Cross & Trecker had offered them employment at the same rate of pay they had received from Bendix. Consequently, they were defined as quits under the benefits plan and were thus ineligible for the benefits they sought.
 
 
 7
 The employees filed suit claiming that the defendants breached their fiduciary duties under sections 404 and 406 of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. Secs. 1104, 1106, by unjustifiably denying them benefits in violation of sections 404(a)(1)(A) and 404(a)(1)(D) of ERISA, 29 U.S.C. Secs. 1104(a)(1)(A), 1104(a)(1)(D), and under federal common law.[4] They also alleged state law claims of detrimental reliance on the information from Hoehn and of mental and emotional distress caused by the denial of benefits.
 
 
 8
 The district court concluded that the plan administrator's classification of the employees as quits because they were offered employment with Cross & Trecker at the same salary they had received from Bendix was not arbitrary and capricious under the terms of the plan. The court also concluded that there was no possibility that the employees relied on the information from Hoehn to their detriment[5] because, had they refused the offers of employment with Cross & Trecker, they still would have been classified as quits under the plan and therefore, ineligible for termination benefits. Accordingly, the district court dismissed the case.
 
 II
 
 9
 A decision granting summary judgment should be affirmed only if
 
 
 10
 the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party .... In this context, all inferences from the facts must be viewed in a light most favorable to the non-moving party .... However, the movant need not present evidence to negate every aspect of the non-movant's claim, they [sic] need only support their own claim that there is no genuine issue of material fact.
 
 
 11
 Adcock v. Firestone Tire and Rubber Co., 822 F.2d 623, 626 (6th Cir.1987) (citing Matsushita Electric Industries Co., Ltd., v. Zenith Radio Corp., 475 U.S. 574 (1986); Celotex Corp. v. Catrett, 477 U.S. 317 (1986)).
 
 
 12
 The appropriate standard of review for decisions of plan administrators under ERISA "is whether the decision was arbitrary, capricious, or in bad faith." Adcock, 822 F.2d at 626; accord Varhola v. Doe, 820 F.2d 809, 812-13 (6th Cir.1987); Cook v. Pension Plan for Salaried Employees, 801 F.2d 865, 869-70 (6th Cir.1986). If the plan administrator's interpretation of a plan ambiguity is rational, courts should defer to the interpretation "in the interest of efficient pension administration." Cook, 801 F.2d at 871.
 
 
 13
 A plan administrator's interpretation of the plan is reasonable if it is consistent with past interpretations of the plan, with the plan's stated goals, and with a fair reading of the plan. Adcock, 822 F.2d at 626-27. Under the plain language of the Bendix plan, the employees would have been ineligible for separation benefits and bridging leaves of absence if they had declined their employment offers with Cross & Trecker, because the offers were for the same salary they had received from Bendix. Although the plan does not specifically address the situation here, where employees accepting an offer of continuing employment at the same salary also claim termination benefits, it is not an irrational or arbitrary reading of the plan to conclude that accepting employment offers with Cross & Trecker also precluded these employees' eligibility for termination benefits. Termination benefits in part make up for a monetary loss. If the same salary is offered, then the loss has been alleviated, whether the job offer is accepted or not.
 
 
 14
 The employees contend they nonetheless may be disadvantaged by the change in employment if the new company has lesser fringe benefits. The plan could have defined eligibility for termination benefits as dependent upon whether offers of employment with a successor employer had equivalent employment benefits. However, the choice was made, years before the plan administrator made the determination that those employees were quits, that eligibility for termination benefits would instead depend upon salary levels alone. As another court reviewing the same interpretation of this plan under similar circumstances concluded, classifying these employees as quits is consistent with the plan's purpose in providing termination benefits: "to minimize hardship caused by lack of employment with Bendix or a successor employer." Aquin v. Bendix Corporation, 637 F.Supp. 657, 662 (E.D.Mich.1986).[6] Moreover, as that court correctly recognized, the interpretation is reasonable because:
 
 
 15
 it characterizes all persons who decline employment as quits (if they are offered 100% pay) and, at the same time, characterizes all persons who accept employment as quits, too. The reasoning is ... that persons who decline employment that would not make them any worse off in terms of base pay are not entitled to severance benefits under the clear language of the Plan. Since persons who accept employment are in an even better economic position, they should not be entitled to benefits either .... this interpretation simply advances the Plan's purpose to prevent hardship caused by involuntary unemployment.
 
 
 16
 Aquin, 637 F.Supp. at 662.
 
 
 17
 We agree with the reasoning of the district court in Aquin and with the reasoning of the district court in this case. Accordingly, we hold that the plan administrator's classification of these employees as quits is reasonable and therefore not arbitrary and capricious.
 
 III
 
 18
 We also agree with the district court's determination that the employees cannot prove detrimental reliance on anything Hoehn may have said to them regarding their eligibility for the termination benefits. Even if we assume that Hoehn did tell the employees they would be eligible for the benefits, their reliance on what Hoehn may have said would not have altered the fact that once Cross & Trecker offered them employment at the same salary Bendix had paid them, the plan considered them quits whether they accepted the offer or not.
 
 
 19
 The employees argue that, had they known Hoehn's representations were incorrect, they could have done something different. Perhaps they would not have accepted employment with Cross & Trecker and would have pursued other employment options. Perhaps they would have argued more vigorously that they were entitled to termination benefits. However, on the basis of the record before us, even when viewed in the most favorable light possible, there is no connection of these speculative possibilities to the administration of ERISA. If the employees were to have any cognizable complaint about their treatment by Bendix, it would be in tort, not on the basis of ERISA or their employment contract.[7]
 
 IV
 
 20
 For the foregoing reasons, the decision of the district court is AFFIRMED.
 
 
 
 *
 Honorable Charles M. Allen, Senior United States District Judge for the Western District of Kentucky, sitting by designation
 
 
 [1]
 Specifically the plan stated:
 Reduction in Force--means an involuntary separation because the employee's position is eliminated as a result of a reduction in personnel, declining business, discontinuance of operations or location closings; provided, however, that an employee who refuses an offer of alternate employment in a suitable salaried position at the same location or at another facility, subsidiary or affiliate of Bendix, will be separated as a quit.
 An employee who is employed at a unit or facility which for any reason (including sale or divestiture) ceases to be owned or operated by Bendix, and who upon termination from Bendix declines an offer of employment, by a successor employer which assumes control of the unit or facility, shall be classified as a quit unless
 (a) the base monthly salary rate offered by the successor employer is less than 100 percent of the base monthly salary rate paid by Bendix at the time of the employee's termination from Bendix; or
 (b) such employee is terminated by the successor employer as part of a reduction in force or on the basis of inability to perform duties as defined herein, within one year after accepting such employment.2 Under the plan, an employee could elect to retire and receive pension benefits any time after the sum of the employee's age plus years of service with Bendix equaled or exceeded 80.
 
 
 [3]
 Hoehn's responsibilities including counseling the salaried employees about their benefits. However, he was not the plan administrator and had no authority to modify the plan or to make any formal determinations concerning the plan
 
 
 [4]
 29 U.S.C. Sec. 1104(a)(1)(A) and (a)(1)(D) provide:
 (a) Prudent man standard of care .... a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and--
 (A) for the exclusive purpose of:
 (i) providing benefits to participants and their beneficiaries ....
 (D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this title ....
 
 
 [5]
 The district court acknowledged that there was an issue of fact concerning what Hoehn said to the employees but determined that the issue was not material and therefore, did not preclude summary judgment. Because we agree with the district court's conclusion that the employees can not sustain their detrimental reliance claim, we also agree that summary judgment is not precluded by this issue of fact. See Fed.R.Civ.P. 56(c)
 
 
 [6]
 Aquin involved a suit brought by salaried employees at a Michigan Bendix facility that was sold to Cross & Trecker at the same time the Ohio facility in this case was sold. The employees in Aquin had sought separation benefits and bridging leaves of absence as well as other benefits when their employment with Bendix was terminated. The district court's decision that the plan administrator's denial of benefits in that case was not arbitrary and capricious was not appealed
 
 
 [7]
 Because we agree that these employees cannot sustain their detrimental reliance claim, we decline to decide on the basis of these facts whether a federal common law claim of detrimental reliance may be pursued in connection with an ERISA action. But see Varhola v. Doe, 820 F.2d at 817 (indicating that ERISA's statutory scheme for damages is complete in itself)
 The Supreme Court recently held that ERISA's civil enforcement remedies are exclusive and therefore preempt state law remedies. Pilot Life Ins. Co. v. Dedeaux, 107 S.Ct. 1549, 1555 (1987). Accordingly, an action based on state law against the plan and plan administrator is precluded by ERISA. However, if the employees could show that Bendix injured them in a manner sufficiently unrelated to their entitlement to benefits under the plan, there might be no bar to pursuing their common law remedies. We express no opinion, of course, as to whether such an action exists on the facts of this case.