James P. ERET, Plaintiff,

v.

CONTINENTAL HOLDING INC., f/k/a Continental Group, f/k/a Continental Can Company, Inc.; CCC Inc. Salaried Pension Plan; and Peter Kiewit Sons' Inc., a Foreign Corporation, Defendants.

No. 92 C 4758.

United States District Court, N.D. Illinois, E.D.

March 15, 1994.

John C. Ambrose, Ambrose & Cushing, P.C., Chicago, IL, for plaintiff.

Stephen Ray Patton and Anne J. McClain, Kirkland & Ellis, Chicago, IL, for defendants.

## MEMORANDUM OPINION AND ORDER

ALESIA, District Judge.

Defendants Continental Holding, Inc., f/k/a Continental Group, f/k/a Continental Can Company, Inc., CCC Inc. Salaried Pension Plan, and Peter Kiewit Sons' Inc. (collectively "Continental") bring the present motion to dismiss plaintiff James P. Eret's Second Amended Complaint. Eret claims Continental violated section 510 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132, 1140, and claims that he is owed early retirement benefits under Continental's pension plan. This court previously granted Continental's motion to dismiss Eret's First Amended Complaint without prejudice. Eret has amended his complaint,[1] and Continental asserts that Eret has alleged no new facts that would entitle him to relief, and accordingly, this court should again dismiss Eret's complaint. For the following reasons, Continental's motion to dismiss is granted, and Eret's Second Amended Complaint is dismissed with prejudice.

## I. FACTS

Although the factual and procedural background of this case is set forth in detail in *Eret v. Continental Holding, Inc.*, 838 F.Supp. 358, 360–62 (N.D.Ill.1993), we review the pertinent facts of the case here. From April 1959 until January 1986, Eret was em-ployed by Continental and participated in the pension plan offered by Continental to its employees ("Pension Plan"). In January 1986, Eret was transferred from Continental's O'Hare plant to its West Chicago plant. Although the move was initially temporary, the transfer was made permanent in February 1988. In September 1988, Continental sold the West Chicago plant to Figgie International ("Figgie"). Sometime in the spring of 1989, during which time Eret worked at the West Chicago plant, the O'Hare plant permanently shut down. Had Eret remained employed at the O'Hare plant when it shut down, he would have been eligible to take early retirement under the Pension Plan's 75/80 provision. The 75/80 provision entitled an employee to take early retirement upon a layoff due to plant shutdown if the employee's combined total of age and service equalled 80 years or more. Upon learning of the O'Hare plant shutdown, Eret applied to the General Pension Board for early retirement pursuant to the Pension Plan's 75/80 provision. The General Pension denied Eret's request, prompting Eret to bring this lawsuit.

This court has previously held that the above-stated facts do not state a cause of action under section 510 because it is acceptable for an employer to transfer an employee to another plant as an alternative to laying off the employee. *Eret*, 838 F.Supp. at 365. Although noting some extreme exceptions encompassing violence or fraud, we found that Eret must allege discharge or constructive discharge in order to satisfy section 510's requirement of alleging a "wrongful employer activity." *Id.* at 364. Because this court found Eret failed to allege that he was discharged or constructively discharged, his claim was dismissed. *See Eret*, 838 F.Supp. at 365. In his Second Amended Complaint now before the court, Eret has augmented his complaint with some additional facts, although he essentially proceeds under the same two theories asserted in his previous complaint. First, Eret contends that his transfer to the West Chicago plant violated

---

1. In Count II of his First Amended Complaint, Eret challenged the Continental Pension Board's decision not to treat the sale of the West Chicago plant as a "shutdown" for purposes of vesting early retirement, or "75/80," benefits. Eret does not assert this claim in his Second Amended Complaint.

section 510 because it was effectuated solely for the purpose of avoiding pension liability under the 75/80 provision. In the alternative, Eret alleges that transferring him to West Chicago amounted to constructive discharge. Specifically, Eret claims that West Chicago had no use for his services, and that during his employ at the West Chicago plant, he was demoted from a computer programmer to a mail room clerk.

## II. DISCUSSION

Eret's new assertions essentially involve two issues. First, Eret directs the court to the case of *McLendon v. Continental Can Co.*, 749 F.Supp. 582 (D.N.J.1989), *aff'd,* 908 F.2d 1171 (3d Cir.1990), involving the same defendant as herein, to support his theory that his transfer violated ERISA because it was effectuated by Continental to avoid pension liability. Second, Eret provides additional facts surrounding his job conditions at the West Chicago plant to support his claim of constructive discharge. We evaluate each argument in turn to determine if Eret's additional assertions support a cognizable section 510 claim.

### A. McLendon v. Continental Can Co.

Eret strenuously urges this court that he is entitled to proceed on his section 510 claim because he was a victim of the same scheme that was found illegal in *McLendon.* In *McLendon,* a class of laid-off and discharged employees sued Continental under section 510, claiming that Continental violated ERISA by setting up and employing a nationwide scheme to lay off employees before they could qualify for pension benefits. *Id.* at 583. The court found that the avoidance

of pension liability was the "prime catalyst" in deciding which employees to lay off and "so pervaded the thinking and goals of the company that it affected all of the decisions regarding the retention or layoff of employees." *Id.* at 590. Thus, the court concluded that Continental had violated ERISA by denying laid-off employees benefits to which they would have been entitled absent Continental's scheme. *Id.* at 611.

The *McLendon* case does not remedy the failure of Eret's claim to allege a wrongful employer activity. *McLendon* in no way suggests that an employee who was retained under Continental's scheme and only states a generalized allegation of employer wrongdoing may bring an action against Continental. Indeed, the class in *McLendon* was not comprised of all Continental employees under the scheme's purview, but rather, the class was limited to laid-off and discharged employees.[2] No matter how nefarious Continental's scheme was, Eret is not relieved of the burden of showing that he was individually harmed by Continental's conduct.

■ Because *McLendon* and the schemes related therein do not support holding that an employee is relieved from alleging a wrongful employer activity, we again look to Eret's complaint to determine whether he has alleged such conduct. An examination of his amended claims demonstrates that, beyond *McLendon,* Eret's claim is identical to his previous complaint, and therefore must be found deficient. As we have previously found, "recent cases suggest that ERISA's scope is restricted where the plaintiff's employment has been continuous and the benefits at issue are limited to layoff or severance

---

**2.** The *McLendon* court, in discussing the plaintiffs' burden of proof in the case, stated that in order to recover the plaintiffs must establish that "the avoidance of such pension benefits was a determinative factor in the layoffs." *Id.* at 584. Clearly, an employee must be laid off to meet this threshold requirement. Similarly, the Third Circuit found the following:

> [T]o recover a monetary award, individual class members ... must satisfy the ... causation requirement. Since this case involves a nationwide plan to interfere with pension benefits, the individual plaintiffs must prove that the plan was implemented at their plant and caused their layoffs. Plaintiff must prove that

"but for" the discriminatory purpose, he or she would not have lost work.

*McLendon v. Continental Can Co.,* 908 F.2d 1171, 1178 (3d Cir.1990). In light of this language, *McLendon* can more readily be construed to weaken Eret's position rather than strengthen it because it expressly states that to recover under a layoff-scheme theory, a plaintiff must demonstrate a layoff caused by a discriminatory purpose. Obviously, Eret cannot satisfy this requirement. We are thus left with the conclusion that Eret's attempt to make out a cognizable section 510 claim by way of *McLendon* is merely bootstrapping.

benefits." *Eret,* 838 F.Supp. at 363–64 (citing *Sallee v. Rexnord Corp.,* 985 F.2d 927 (7th Cir.1993); *Varhola v. Doe,* 820 F.2d 809 (6th Cir.1987); *Bogue v. Ampex Corp.,* 976 F.2d 1319, 1327 (9th Cir.1992)). As noted above, transferring an employee to keep him employed, instead of laying the employee off to collect 75/80 benefits, does not constitute impermissible employer action. Eret's Second Amended Complaint does not go beyond this allegation.

■ Thus, this court finds that Eret has not alleged the requisite elements of a section 510 claim. However illegal and detrimental Continental's practice of monitoring and discharging employees before their pension benefits vested was, Eret has no cause of action against Continental unless he alleges that the scheme harmed *him.* Continuing employment is not harm under section 510, and this type of allegation comprises the core of Eret's complaint.

### B. *Constructive Discharge*

■ In a further attempt to overcome the deficiencies of his previous complaint, Eret realleges his claim that Continental's actions amounted to a constructive discharge. A plaintiff may sustain a section 510 action under a theory of constructive discharge if the plaintiff shows that "working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Lojek v. Thomas,* 716 F.2d 675, 681 (9th Cir.1983). In addition, courts have found constructive discharge where the employer has demoted an employee to entry level work to cause plaintiff to quit before his pension rights vest. *Jess v. Pandick, Inc.,* 699 F.Supp. 698, 699 (N.D.Ill.1988). In this court's prior opinion, Eret's complaint was found deficient under this theory because Eret's bare allegation that the West Chicago plant had "no real need for his services" did not resemble a claim of constructive dis-

charge as recognized by the courts. *Eret,* 838 F.Supp. at 365.

In his brief in opposition to the present motion, Eret again maintains that he is entitled to bring his cause of action because he "was transferred to a job where he wasn't needed in order to deny pension benefits." Plaintiff's Amended Memorandum of Law, at p. 8. Eret contends that at the time he was transferred to the West Chicago plant, there was "no work or duties to be performed" by him.[3] Second Amended Complaint ¶ 20. Eret states that on October 19, 1988, Figgie demoted him from a computer programmer to working in the stock room. *Id.* at ¶ 24. Finally, Eret states that he was laid off by Figgie in June 1990. *Id.* at ¶ 25.

■ As an initial point, we note that Eret's new assertions regarding Figgie's conduct towards him—demotion and discharge—are irrelevant in determining whether Continental's conduct violated section 510.[4] According to Eret's complaint, the demotion occurred when Continental had no remaining interest in the West Chicago plant. *See* Second Amended Complaint, at ¶ 21, 24. Eret cites *Blake v. The Bank of New York,* 1991 WL 51124, 1991 U.S. Dist. LEXIS 3936 (S.D.N.Y. Apr. 2, 1991), as supporting his case, but the facts of *Blake* do not deviate from the normal fact pattern of constructive discharge cases. In that case, after the company that employed plaintiff merged with a second company, BNY, the plaintiff was demoted from Senior Vice–President to a position with greatly diminished responsibilities. The plaintiff subsequently sued BNY under a theory of constructive discharge, and the court found that the plaintiff had stated a cause of action. *Id.* at * 9–* 10. Rather than supporting Eret's position, however, *Blake* illustrates that a claim of constructive discharge must be brought against the employer that demoted the plaintiff, and not against the plaintiff's former employer who effectuated a sale of the company. Thus, Eret cannot recover from Continental

---

**3.** This assertion, however, is belied in part by an earlier paragraph in Eret's complaint stating that "[i]n January of 1986, Plaintiff became part of a team of employees ... installing a system at the # 495 West Chicago plant." Second Amended Complaint, ¶ 14.

**4.** Of course, we do not pass on the situation that might exist if Eret had alleged that Continental had controlled or at least had knowledge of Figgie's intended actions.

by asserting that Figgie's actions amounted to constructive discharge.

 A more fundamental problem with Eret's complaint, however, is that Eret simply does not allege an essential element of a constructive discharge claim. "[A] finding of constructive discharge requires the determination that ... working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Kreis v. Townley,* 833 F.2d 74, 82 (6th Cir.1987). Disregarding Figgie's conduct towards Eret, transferring an employee to another plant is not the sort of employer conduct that rises to the level of intolerable working conditions, as required to sustain a claim of constructive discharge. While it is understandable that an employee who desires to retire early would be frustrated at the prospect of working additional years, the doctrine of constructive discharge was not designed to accommodate this type of employee dissatisfaction. Rather, ERISA's purpose is "to protect the employment relationship which gives rise to an individual's pension rights." *Deeming v. American Standard, Inc.,* 905 F.2d 1124, 1127 (7th Cir.1990) (citing *West v. Butler,* 621 F.2d 240, 245 (6th Cir.1980)). As we stated in our previous opinion, "[i]t unreasonably stretches the meaning of the relevant statutory language to suggest that protection of the employment relationship under ERISA means an employer must discharge an employee if doing so would make the employee eligible for severance or layoff benefits." *Eret,* 838 F.Supp. at 365.

Thus, we agree with defendants that Eret has alleged no facts from which a trier of fact could conclude that Continental constructively discharged him. Objectively viewed, a reasonable person would not feel compelled to terminate his employment merely because he was transferred to a similar position at a different location. Thus, for the above reasons and those stated in *Eret v. Continental Holding, Inc.,* 838 F.Supp. 358 (N.D.Ill.1993), Eret's complaint fails to state a cause of action under section 510 of ERISA.

## III. CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is granted. Plaintiff's Second Amended Complaint is dismissed with prejudice for failure to state a claim upon which relief may be granted.