NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 04a0168n.06
Filed: December 17, 2004

Nos. 03-6382, 03-6614, 03-6539

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

RAYMOND G. BAIZE, Jr.; FRANK R. BLACKMON; CAROLYN M. DUVALL; DENNIS K. HUBBARD; PHYLLIS K. LADUKE; GEORGE T. LESHER; CURTIS N. MARTIN, Sr.; KATHY S. SMITH; JOHN L. TERRY, Jr.; and RAYMOND L. WILBERDING,

        Plaintiffs-Appellants/Cross-Appellees,

v.

PHILIP MORRIS INCORPORATED; GARY RUTH; BAKERY, CONFECTIONERY, TOBACCO WORKERS AND GRAIN MILLERS INTERNATIONAL UNION; and BAKERY, CONFECTIONERY, TOBACCO WORKERS AND GRAIN MILLERS INTERNATIONAL UNION, LOCAL NO. 16T,

        Defendants-Appellees/Cross-Appellants.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF KENTUCKY

_____/

Before:      MARTIN and BATCHELDER, Circuit Judges; JORDAN, Senior District Judge.[*]

      BOYCE F. MARTIN, JR., Circuit Judge. This action arises out of the June 30, 2000, closure of Philip Morris Inc.'s Louisville, Kentucky, plant. The plant's closure forced plaintiffs, who were members of both the Tobacco Workers & Grain Millers International Union and the Local 16T, Bakery, Confectionery, Tobacco Workers & Grain Millers International Union, to be laid off.

_____

[*]The Honorable R. Leon Jordan, Senior United States District Judge for the Eastern District of Tennessee, sitting by designation.

Following their layoffs, plaintiffs filed suit against Philip Morris, Gary Ruth, a former Philip Morris manager, and the Unions, alleging violations of the National Labor Relations Act, the Labor Management Relations Act, the Employee Retirement Income Security Act, and Kentucky state law. The gravamen of plaintiffs' complaint is that Philip Morris failed to offer them certain retirement benefits that were offered to other company employees. The district court granted defendants' motion for summary judgment, holding that plaintiffs had failed to present genuine issues of material fact regarding the claims under the National Labor Relations Act, the Labor Management Relations Act, and the Employee Retirement Income Security Act, and that the state law claims were preempted by the National Labor Relations Act and the Labor Management Relations Act. Plaintiffs appeal this ruling.

Following the summary judgment ruling, the defendants filed a motion for costs. The district court awarded some costs, but held that defendants were not entitled to the costs they incurred in procuring copies of deposition transcripts. Defendants appeal this ruling.

Plaintiffs' first claim is a hybrid section 301/fair representation claim against Philip Morris and the Unions. The Supreme Court has described this type of claim as follows:

> Such a suit, as a formal matter, comprises two causes of action. The suit against the employer rests on § 301 [of the Labor Management Relations Act], since the employee is alleging a breach of the collective bargaining agreement. The suit against the union is one for breach of the union's duty of fair representation, which is implied under the scheme of the National Labor Relations Act. Yet the two claims are inextricably interdependent. To prevail against either the company or the Union, ... [employee-plaintiffs] must not only show that their discharge was contrary to the contract but must also carry the burden of demonstrating a breach of duty by the Union. The employee may, if he chooses, sue one defendant and not the other; but the case he must prove is the same whether he sues one, the other, or both. The suit is thus not a straightforward breach of contract suit under § 301, . . . but a hybrid § 301/fair representation claim, amounting to a direct challenge to the private

settlement of disputes under [the collective-bargaining agreement].

*Id.* (citations, internal quotation marks and footnote omitted). Thus, to prevail on this claim, plaintiffs must prove both a breach of contract by Philip Morris and a breach of the duty of fair representation by the Unions.

Plaintiffs argue that Philip Morris committed breach of contract by expanding the sphere of employees entitled to enhanced retirement benefits to include a group of employees who would have attained twenty-five years of service with Philip Morris by December 1, 2000, had the plant remained in operation at that time. Plaintiffs were not included in this group – and, thus, were not entitled to the enhanced benefits – because they did not have the requisite company seniority. Like the district court, we fail to see how this expansion of benefits amounts to a breach of contract. Nothing in any applicable agreement prohibits Philip Morris from offering enhanced retirement benefits to a larger sphere of employees than originally anticipated. Plaintiffs also argue that any expansion of benefits should have been based upon plant-wide seniority, rather than company-wide seniority. This argument lacks merit, however, because a Memorandum of Understanding between the parties clearly states that the determination of whether an employee is entitled to "receive benefits" would be based upon the employee's number of "years of service" with the company. For these reasons, plaintiffs have failed to raise a genuine issue of material fact as to whether Philip Morris committed breach of contract and defendants are entitled to judgment as a matter of law on the hybrid section 301/fair representation claim.

Plaintiffs also claim that the district court erred in awarding summary judgment to defendants on their claim for violation of section 510 of the Employee Retirement Income Security Act. To

succeed on their section 510 claim, plaintiffs must show that the employer engaged in prohibited conduct for the purpose of interfering with the attainment of a right to which the employee may become entitled. *See Smith v. Ameritech*, 129 F.3d 857, 865 (6th Cir. 1997). A plaintiff "must come forward with evidence from which a reasonable jury could find that the defendants' desire to avoid pension liability was a determining factor" in the employer's conduct. *Id.* (citing *Humphreys v. Bellaire Corp.*, 966 F.2d 1037, 1044 (6th Cir. 1992)). Plaintiffs argue that Philip Morris's decision to expand the sphere of employees entitled to enhanced benefits to certain employees, but not to them, was motivated by a desire to avoid pension liability. We disagree. Philip Morris was not obligated to expand its benefits to any group of employees. The fact that it chose to do so with respect to a group of employees with a certain level of seniority certainly does not indicate a desire to avoid pension liability as to employees who had not attained such seniority. *See Varhola v. Doe,* 820 F.2d 809, 816 (6th Cir. 1987) (holding that there was no evidence that the employer "deliberately discriminated against [the plaintiffs] for the purpose of interfering with their rights" to benefits by denying them benefits that other employees were afforded).

Finally, plaintiffs argue that the district court erred in holding that their Kentucky state law fraud claim was preempted by section 8 of the National Labor Relations Act and section 301 of the Labor Management Relations Act. The fraud claim alleges that Gary Ruth, a Philip Morris manager, assured plaintiffs, among other employees, prior to the announcement of the plant closing that "there will be no future layoffs" at the Louisville plant, that if the plant were to close it would "be by attrition of the employees" and would "not [close] before . . . 2003 to 2005," and that he "did not come here to close the [p]lant." Plaintiffs contend that they acted in reliance upon these statements,

which proved to be false, by "remaining employed at the [p]lant and by foregoing their rights to transfer with seniority to other Philip Morris plants, including its plants in Richmond, Virginia, and Cabarrus County, North Carolina." Consequently, plaintiffs allege, they "suffered injuries and damages, including loss of work and attendant lost wages, loss of seniority, and loss of benefits, rights and attainment of rights under one or more employee benefit plans established by Philip Morris in which they were participants and under Subchapter I of ERISA."

Our analysis begins – and ends – with section 8 preemption, a topic on which the seminal case is *San Diego Building Trades Council v. Garmon*, 359 U.S. 236 (1959). In *Garmon*, the Supreme Court explained that where the conduct alleged in a particular claim is even "arguably" subject to section 7 or 8 of the National Labor Relations Act, "the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board" and deem the claim preempted. *Id.* at 245. "The party arguing *Garmon* preemption bears the burden of showing that the conduct at issue is prohibited or protected by the National Labor Relations Act." *N.W. Ohio Adm'rs, Inc. v. Walcher & Fox, Inc.*, 270 F.3d 1018, 1027 (6th Cir. 2001). We agree with the district court that plaintiffs' fraud claim concerns conduct that is arguably preempted by section 8 and, therefore, is preempted. *See Serrano v. Jones & Laughlin Steel Col, LTV Corp.*, 790 F.2d 1279, 1287 (6th Cir. 1986) (holding that plaintiffs' fraud claims were preempted by section 8 because, "whether classified as a violation of the general duty to bargain in good faith or the more particular duty to bargain over the effects of a plant closure, the conduct about which plaintiffs are complaining" – i.e., "continuing to take advantage of [certain] concessions without revealing the likelihood of a [plant] shutdown" – "was arguably a violation of section 8").

Defendants also have appealed the district court's order denying in part their motion for costs. Their primary complaint is that the district court abused its discretion in failing to award them costs for procuring copies of deposition transcripts, although the court did allow costs for the original transcripts. In the district court's view, the claimed costs were "excessive" and, therefore, justified reduction. Defendants have failed to establish that the district court abused its discretion in so finding.

AFFIRMED.