**John O'DOM, et al., Plaintiffs,**

v.

**GRAPHIC COMMUNICATIONS INTERNATIONAL UNION SUPPLEMENTAL RETIREMENT AND DISABILITY FUNDS, et al., Defendants.**

**No. C–1–86–1252.**

United States District Court,
S.D. Ohio, W.D.

Sept. 5, 1989.

Monica R. Bohlen, Cincinnati, Ohio, for plaintiffs.

John J. Finnigan, Cincinnati, Ohio, for defendants.

### ORDER

HERMAN J. WEBER, District Judge.

This matter is before the Court pursuant to a two day trial to the Court at which the parties presented witnesses, trial exhibits and argument. Plaintiffs' Complaint alleges violations of the Employee Retirement Income Security Act of 1974 ("ERISA"). On the basis of the evidence, testimony and argument presented by the parties, the Court makes the following Findings of Fact and Conclusions of Law.

### Findings of Fact

The following are the uncontroverted facts as stated in the Joint Final Pre–Trial Order submitted by all parties and entered by the United States Magistrate:

Plaintiffs John O'Dom ("O'Dom") and Raymond J. Richards, Jr. ("Richards") are residents of the State of Ohio. Plaintiff

O'Dom's date of birth is February 9, 1925, and plaintiff Richards' date of birth is April 6, 1925.

Plaintiffs are members of OKI Local 508 of the Graphic Communications International Union ("GCIU").

Plaintiffs are retirees, as that term is defined in the Retirement Plan governed by the GCIU Supplemental Retirement and Disability Fund (the Fund).

Defendant Fund is a trust fund, created pursuant to an agreement and declaration of trust entered into between the GCIU and the Trustees as of December 30, 1966, to fund retirement benefits pursuant to the terms of the Retirement Plan and is administered in the District of Columbia.

Defendant George L. Griesbauer, Jr. ("Griesbauer") is a citizen of the State of Maryland. He has been the administrator and agent for service of legal process of the Fund since June 14, 1980.

The Retirement Plan is an employee pension benefit plan of the defined benefit type. The four kinds of benefits offered are the basic benefit, the supplemental benefit, the vested benefit, and the long term disability benefit. The Retirement Plan also offers several options, including the joint and survivor option. The Plan is administered by the Board of Trustees. As of November, 1984, the Fund's assets were valued at more than $327,000,000.00.

According to the Plan, covered employees are defined as all persons within the bargaining unit for whom the employer must make contributions, including certain foremen or supervisors, and full time employees of the International, GCIU locals, the GCIU Fund, and any similar body, if contributions are made on their behalf. Full time employees are not defined in the Plan.

The basic benefit is provided to covered employees, who, if otherwise eligible, can retire at age 58 or older and start to receive the benefit beginning at age 60, and this benefit is payable for life. In April, 1985, the supplemental benefit was amended, retroactive to February 1, 1984, to allow employees, if otherwise eligible, who retire between ages 55 and 57, to receive a reduced percentage of the supplemental benefit between the ages of 60 and 65, depending on how old they were on the date of retirement.

The basic benefit is available to a participant who retires from the graphic arts industry at the age of 58 years or older and has had contributions made on his behalf for at least 52 weeks.

The supplemental benefit is available to a participant who retires from the graphic arts industry between the ages of 55 and 65, has had at least ten years of credited service, and has had contributions made on his behalf for at least 52 weeks for employees who became participants prior to May 1, 1972, or at least five years for employees who became participants on or after May 1, 1972.

Plaintiffs had at least 10 years of credited service and had contributions made on their behalf for at least 52 weeks.

The Retirement Plan contains a break in service rule, according to which an employee who is a participant ceases to be a participant if no contributions are required to be made on his behalf by an employer during two consecutive fiscal years. The Plan's fiscal year runs from May 1st through April 30th. An employee with 10 years of vested service who ceases to be a participant thereafter is entitled to a vested benefit.

If a participant has 10 years of vested service when he or she ceases to be a participant, he or she is entitled to a vested benefit only.

Plainfiff Richards had 10 years of vested service as of August, 1980.

The supplemental benefit plan was also amended in August of 1986, retroactively effective to February 1, 1986, to allow participants who were between the ages of 55 and 57 at the time that they last worked in covered employment and who had 15 years of credited service with five years in the Plan to receive a reduced supplemental benefit if they retire between the ages of 55 and 57 and a full supplemental benefit if they retire between the ages of 58 and 65.

Plaintiff O'Dom was employed as an artist and litho-striper in the industry since April of 1946. He became a dues-paying member of the GCIU in August, 1947. He became a participant in the Plan at its inception on May 1, 1969. After becoming a participant in the Plan, O'Dom continued working in the industry until August, 1980, when his employer, Diamond International, closed down, laying off all employees. O'Dom was 55 years old at the time. O'Dom then worked for Stevenson Photo Color Company during March, April, and May, 1981.

Plaintiff Richards was employed as a litho-plate maker in the industry since 1945. He became a dues-paying member of the GCIU in October, 1950. He became a participant of the Plan at its inception on May 1, 1969. From the date that he became a participant in the Plan, Richards continued working for Diamond International until August of 1980 when the plant closed. Richards was 55 years old at the time.

Each participant of the Plan received an annual statement confirming covered wages, which they were instructed to review and advise the Fund if incorrect. This form advised participants to contact Defendant Griesbauer for clarification of any provisions of the Plan. Each plaintiff received three annual statements of covered wages, issued December 31, 1982, December 31, 1983, and December 31, 1984, confirming that contributions had been remitted by and accepted from Local 508 on behalf of plaintiffs in May, 1982. These statements indicated that O'Dom had 592 weeks of covered wages and Richards had 581 weeks of covered wages.

In response to an inquiry on May 13, 1982, seeking confirmation of O'Dom's pension status, defendants informed O'Dom in July of 1982 and August of 1982 that he had 592 weeks of contributions reported through May of 1982 and that based on that he would be eligible for a basic benefit of $110.54 per month, and an additional supplemental benefit until age 65 of $450.00 per month, commencing the month following his 60th birthday.

In response to inquiries on May 31, 1982, and June 6, 1984, seeking confirmation of Richards' pension status, defendants informed Richards in July, 1982 that upon reaching age 60 he would be entitled to $106.62 per month of a basic benefit and $450.00 of a supplemental benefit; and on June 13, 1984, and July 9, 1984, defendants informed Richards that he would be entitled to a basic benefit of $112.00 per month and $542.00 per month of a supplemental benefit, and that defendants would do all in their power to expedite his pension benefit payments. The increase in benefits was due to plan amendments.

On or about September 4, 1984, Richards submitted his Application for Benefits to defendants, opting to take early retirement at age 60, which he was to become on April 6, 1985. If eligible, Richards was entitled to receive his first benefit on May 1, 1985.

On September 20, 1984, defendants acknowledged receipt of Richards' application informing him that they had calculated an estimated benefit of $654.01, an increase of $59.00 per month over the previously confirmed amount, a result of plan amendments since the last notice to him.

On January 7, 1985, O'Dom submitted his Application for Benefits to defendants, opting to take early retirement at age 60, which he was to become on February 8, 1985, and opting to take the joint and survivor option which would reduce his basic benefit amount by 12%.

In January, 1985, defendants acknowledged receipt of O'Dom's application, advising him that they had calculated an estimated benefit of $645.36 per month, an increase of $84.82 per month over the previously confirmed amount, a result of plan amendments since the last notice to O'Dom.

On June 10, 1985, defendant Griesbauer informed each plaintiff that the May, 1982 contributions from the Local were being retroactively cancelled because they were part time employees and the Trustees, on May 22–23, 1985 determined that contributions would not be accepted on behalf of part time employees of Locals. Based on this decision, Griesbauer informed O'Dom

that he was entitled to his basic benefit and only 80% of the supplemental benefit, based on the modification of the Plan effective February, 1984, and informed Richards that he was not eligible for the basic or supplemental benefit, but was only entitled to a vested benefit of $78.94 per month.

On June 10, 1985, defendants informed Local 508 that contributions it made on behalf of part time employees of local unions were improper. Defendants also informed the Local that persons currently retired and receiving the supplemental benefit would continue to do so despite the fact that their eligibility was based upon credit and contributions derived from part time employment in the local unions.

On June 19, 1985, defendants sent O'Dom a lump sum check for his basic benefit of $103.34 per month and his supplemental benefit of $433.60 per month, which payments represented retroactive benefits, retroactive to March 1, 1985.

On June 19, 1985, defendants sent Richards a lump sum check for his vested benefit of $78.94 per month, representing retroactive benefits retroactive to May 1, 1985.

According to the Plan, the Trustees shall be the sole judges of entitlement to or amount of benefits.

On June 24, 1985, plaintiffs filed appeals from the determinations concerning their pension.

The Fund Trustees considered and denied each plaintiff's appeal. The plaintiffs were informed of the Trustees' decision by letter dated August 6, 1985.

The following are the Court's findings of fact based upon the evidence produced at trial:

The Plan covers both full time and part time employees of employers in the graphic arts industry, however, only full time employees of international and local unions are covered by the Plan.

Based on their work history, since O'Dom and Richards were laid off of work by Diamond International (an employer of the graphic arts industry), plaintiffs needed to work in *covered* employment during the fiscal year beginning May 1, 1981 through May 1, 1982 to avoid a break in service and their eligibility for the Supplemental Benefit.

Plaintiffs O'Dom and Richards each worked two days at GCIU Local 508 in November, 1981. They each worked for a total of 14 hours in these two days. They each received $40.00 for their two days of work, which amounted to $2.87 per hour, which was less than the $3.35 minimum wage in effect at that time.

GCIU Local 508 made contributions for $40.00 of covered wages reported on O'Dom and Richards' behalf in May, 1982 for their two days of work at GCIU Local 508 in November, 1981. No other additional contributions were remitted to the Fund between May of 1982 and each plaintiff's date of retirement at age 60.

At the time of plaintiffs' hire, the then Executive Vice President of Local 508, Dexter Denney, contacted the Fund to determine whether pension contributions could be made on behalf of plaintiffs by Local 508 for work done at the Union, and, if so, when those contributions should be made. Denney did not, however, inform the Fund of the nature or length of plaintiffs' employment. Rather, John Azadian, the then Local 508 President, maintained that both plaintiffs were to be hired full time as he was authorized to do by Local 508's By–Laws.

Upon that information, Benjamin V. Caolie, the Assistant Administrator to the Fund, instructed Denney that contributions could be made on behalf of O'Dom and Richards and that those contributions should be in May, 1982 regardless of when they worked. Denney then communicated that information to President Azadian and to O'Dom and Richards.

The practice of avoiding a break in service and loss of eligibility for the supplemental benefits by working for the local union on a part time basis began in 1975 when the former Fund Administrator, without the knowledge of the Trustees, began to advise the local unions and participants of this scheme. The situation typically arose after a plant closing and the older

workers of the closed shop would then be hired by the local union to do several hours of work for each year or each month for the local as necessary to avoid a break in service until they were eligible for early retirement at age 60. The local unions then made minimal pension payments on behalf of these employees and the payments were accepted by the Fund. The Fund routinely confirmed participation of such part time employees and accumulation of credit in the form of annual contribution statements.

This practice continued after this Fund Administrator's departure in June, 1980 as a result of the actions of the employees who had served under him.

During the fall of 1984, however, Griesbauer made a routine review of an application for the Supplemental Benefit submitted by a participant from a different local union and discovered that contributions had been made on the participant's behalf by his local union which were so intermittent that the participant could not possibly have been considered to be a full time employee.

As a result, Griesbauer checked the contribution reports from other local unions and discovered that several other locals had also made intermittent contributions on behalf of participants which could not possibly have been based upon full time employment. Griesbauer presented this information to the Trustees at a meeting on March 1, 1985.

The Trustees instructed Griesbauer to make a comprehensive review of the Fund's records to determine the number of cases in which this occurred. This review indicated that 134 participants, including plaintiffs, had had contributions made on their behalf for part time employment in violation of the Fund's rules. The participants fell into four categories:

A. Forty-one (41) were already retired and receiving benefits from the Fund;

B. Thirty-seven (37) were vested with respect to the Basic Benefit only, not counting contributions by the local union received on their behalf; these participants would not be eligible for the Supplemental Benefit if the contributions from the local union already received by the Fund on their behalf were counted, and no such new contributions were accepted;

C. Seven (7) were covered by a recent amendment which broadened the eligibility requirements for the Supplemental Benefit to include participants in the 55–57 age group, not counting the contributions made by the local union to the Fund on their behalf; and

D. Forty-nine (49) were potential retirees, that is, those who would have been eligible for the Supplemental Benefit if contributions by the local union already received on their behalf were counted and no contributions from local unions were accepted after March 1, 1985.

Griesbauer calculated that the total liability for the Supplemental Benefit payments for these 134 participants, assuming that they would all survive to age 65, was $1,355,738.00.

After considering the problem, the Trustees decided to take the following action:

A. To permit all retired participants to continue to receive the Supplemental Benefit through age 65;

B. To refund all other contributions from local unions made on behalf of part time employees and to cancel the credit for such contributions;

C. To deny the Supplemental Benefit to participants who had not begun to receive benefits, whose application were based on part time local union employment; and

D. To prohibit all other participants from counting contributions earned through part time local union employment toward their vesting for the Supplemental Benefit.

Accordingly, the Fund refunded to GCIU Local Union 508 the contributions it made on behalf of O'Dom and Richards. Without this contribution, both O'Dom and Richards were rendered ineligible for the full Supplemental Benefit because the cancellation of their credit for work at GCIU Local 508 caused them to incur a break in service.

O'Dom and Richards were first made aware of this problem with the contribution from Local 508 and their ineligibility for benefits in December, 1984. At the time of that notification, it was too late for either O'Dom or Richards to correct the problem as they were beyond the date within which it was necessary for them to have a contribution made on their behalf to avoid the break in service.

Griesbauer made the decision that the contributions made on behalf of O'Dom and Richards by Local 508 were not proper because plaintiffs were part time employees of Local 508 and the contributions were not in accordance with Plan documents.

Griesbauer made this determination in spite of the fact that the Local Union President advised him that both O'Dom and Richards had been hired full time. Griesbauer believed that the substantial evidence before him indicated that neither O'Dom nor Richards were full time employees of Local 508: there was a long-standing practice of hiring union members for a very short period of time to enable them to qualify for the Supplemental Benefit; both O'Dom and Richards only worked two days earning a total of $40.00 each; the reason given for the termination of both O'Dom and Richards was that a Ms. Coombs and Ms. DeZarn complained about their work performance, however, neither Coombs nor DeZarn complained about plaintiffs' performance and plaintiffs' supervisor was satisfied with their work; other than a pay check, no paperwork ever existed to verify plaintiffs' contentions that GCIU Local 508 had hired them as full time employees and no memorandum was ever presented to the bookkeeper instructing her to add plaintiffs to the payroll; the bookkeeper did not prepare a verification of the plaintiffs' social security numbers and no W-2 withholding form was ever prepared for them; although their supervisor worked on the same project and received the same rate of pay as plaintiffs, GCIU Local 508 made no contribution to the Fund on behalf of the supervisor; neither plaintiff was paid for his two days of work from the GCIU Local 508 payroll checking account, rather they were paid from a separate checking account used by the local for general expenses which was inconsistent with Local 508's custom and practice.

The Board of Trustees considered the facts concerning the application for benefits of O'Dom and Richards at the July 31, 1985 Full Board of Trustees Meeting, when their appeals were presented by Griesbauer.

The Board of Trustees based their decision upholding the denial of benefits on statements by Griesbauer that plaintiffs were part time employees of Local 508 whose contributions for $40.00 of wages reported on their behalf in May, 1982 were refunded to the local, and based on a letter from Local 508 President Denney which stated that plaintiffs were hired on a full time basis but were terminated after a short time because of their work performance. The Board of Trustees rejected the statements of President Denney concerning the hiring of O'Dom and Richards.

During a subsequent review of the case, the Executive and Finance Committee of the Board of Trustees requested and received an affidavit from President John Azadian detailing the hiring of plaintiffs as full time employees. Mr. Azadian's statements were also rejected by the Executive and Finance Committee of the Board of Trustees.

### Conclusions of Law

The Fund and the Plan are an employee pension benefit plan as defined by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1002(2). Plaintiffs are participants in the Plan as defined by ERISA, 29 U.S.C. § 1002(7).

Defendant George L. Griesbauer, Jr. and the Board of Trustees are "fiduciaries" within the meaning of ERISA as they exercise discretionary authority or control over management or disposition of assets of the Fund. 29 U.S.C. § 1002(21)(A).

Both the Trust and Plan give the Trustees the discretionary authority to determine eligibility for benefits and to construe the terms of the documents; therefore, the standard of review which this Court must follow in judging the legality of the defen-

dants' decisions is whether they acted arbitrarily and capriciously. *Firestone Tire & Rubber Co. v. Bruch,* —— U.S. ——, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989); see also, *Varhola v. Doe,* 820 F.2d 809, 813 (6th Cir.1987).

This standard of review requires the Court to "consider whether the decision was based upon a consideration of the relevant factors and whether there has been a clear error of judgment." *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 822, 28 L.Ed.2d 136 (1971). The scope of review under the arbitrary and capricious standard is narrow and a court is not to substitute its judgment for that of the administrators and/or trustees; the arbitrary and capricious standard is applied in order to avoid "excessive judicial interference with plan administration." See *Cook v. Pension Plan for Salaried Employees of Cyclops Corp.,* 801 F.2d 865, 870 (6th Cir.1986).

In determining whether a decision on an application for benefits is arbitrary or capricious, a federal court "is to focus on the evidence before the trustees at the time of their final decision and is not to hold a de novo factual hearing on the question of the applicant's eligibility." *Daniel v. Eaton Corp.,* 839 F.2d 263 (6th Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 76, 102 L.Ed.2d 52 (1988), citing *Wardle v. Central States, Southeast and Southwest Areas Pension Fund,* 627 F.2d 820, 824 (7th Cir.1980), *cert. denied,* 449 U.S. 1112, 101 S.Ct. 922, 66 L.Ed.2d 841 (1981).

A deferential standard of review is appropriate in this case, since the Trustees exercised discretionary powers to construe disputed or doubtful terms and, in such circumstances, the Trustees' interpretation should not be disturbed if it is reasonable. *Firestone,* 109 S.Ct. at 954.

This Court's duty is not to evaluate the merits of the opposing interpretations of the Plan's provisions but, rather, this Court must determine whether the Plan Administrator and/or Trustees acted arbitrarily and capriciously in denying plaintiffs' benefits. *Varhola,* 820 F.2d at 815.

The defendants' interpretation of the Plan's "full time" employment provision and their decision to exclude plaintiffs' work for Local 508 from coverage was not arbitrary or capricious in light of the evidence available at the time their determination was made. Further, this determination was the result of a deliberate, principled reasoning process; the Administrator's reasons and formal decision explaining the interpretation which it applied in making its decision indicates that plaintiffs' individual cases were reviewed and considered, and that their decision that the status of these two plaintiffs was different from other employees who were granted benefits, is supported by the evidence before them. The fact that former Fund Administrators had authorized local unions to make contributions to the Fund for part time employees, and the fact that the Local 508 President in this case understood that he had the Fund's authorization to make such improper contributions for these two plaintiffs does not make the practice proper, nor does it preclude the present Administrators from fulfilling their obligations to the Fund and correcting the mistake; these factors do not affect the reasoned basis for the final determination that O'Dom and Richards' applications for such benefits should be denied.

For the same reasons, the decision to retroactively cancel plaintiffs' contributions was not arbitrary or capricious and, therefore, since Griesbauer has not violated any fiduciary duty in his actions, the Trustees' decision based upon his representations is, in turn, not a breach of their fiduciary duty to plaintiffs.

In conclusion, this Court finds that the decision to characterize plaintiffs O'Dom and Richards' work for GCIU Local 508 as part time, and the decision to retroactively cancel the contributions made for that work, were not arbitrary or capricious and, accordingly, all defendants are entitled to judgment on all of plaintiffs' claims in this case.

IT IS SO ORDERED.