867 F.2d 130
 1989 A.M.C. 644
 In the Matter of ARBITRATION NO. AAA13-161-0511-85 UNDER the
GRAIN ARBITRATION RULES of American Arbitration
Association.
GOVERNMENT OF INDIA, Petitioner-Appellant,
v.
CARGILL INCORPORATED, Respondent-Appellee.
 No. 118, Docket 88-7132.
 United States Court of Appeals,
Second Circuit.
 Argued Sept. 20, 1988.
Decided Jan. 25, 1989.
 
 D.S. Sastri, Silver Spring, Md. (Krishna M. Vempaty, New York City, of counsel), for petitioner-appellant.
 John F. O'Connell, New York City (Burlingham, Underwood & Lord, New York City, of counsel), for respondent-appellee.
 Before MESKILL, PIERCE and WINTER, Circuit Judges.
 PIERCE, Circuit Judge:
 
 
 1
 The Government of India appeals from an order of the United States District Court for the Southern District of New York, Daronco, J., denying India's motion to vacate an arbitration award for certain carrying charges owed Cargill, Inc. India seeks to vacate the arbitrators' award on three grounds: 1) that Cargill's claims were not arbitrable, since they were brought after the contractual time limit for commencing arbitration had passed; 2) that the arbitrators failed to make the award in a timely manner; and 3) that the award was too indefinite, because made in a lump sum without differentiating between the individual claims contested by the parties. The Government of India also appeals from the granting of Cargill's cross-motion to confirm the award. Since we find that the arbitrators acted well within their discretion, we affirm.
 
 BACKGROUND
 
 2
 Underlying this controversy are four contracts for the sale of wheat, entered into between Cargill, Inc. and the Government of India ("India") in August 1982 and September 1983. The contracts were all essentially identical. Clause 17 of each contract required India to pay Cargill carrying charges for storage, insurance, and interest, if India's designated ships failed to begin loading within the periods prescribed by contract. Clause 17 further required Cargill, if it sought to recover carrying charges, to notify India of its claims within ninety days after the loading was complete, and to file for "remedial proceedings" within six months after loading. Under Clause 24 of the contracts, "any controversy or claim arising out of, in connection with or relating to [the] contract[s]" was to be settled by arbitration before the American Arbitration Association, pursuant to the Association's Grain Arbitration Rules.
 
 
 3
 The grain was delivered, per the contracts, to five different ships from March 1983 to January 1984. In each instance, India's designated vessel was late in beginning the loading process, and thus India incurred carrying charges. Cargill issued invoices to India for the carrying charges, and India concedes that the invoices were issued in a timely manner. Cargill's five invoices claimed, in total, carrying charges of $186,333.02.
 
 
 4
 It was not until July 10, 1985, however, that Cargill, having failed to settle its invoiced claims against India, demanded arbitration of the dispute over the carrying charges. Before the three-member arbitration panel subsequently convened, India vigorously contested Cargill's right to seek arbitration, arguing in preliminary proceedings that Cargill was time-barred from seeking arbitration because Cargill had not demanded arbitration within the six-month limit set by the contracts. Among the more compelling of Cargill's responses to India's contention was Cargill's argument that the parties had an established history of negotiating claims for carrying charges. As a result of the logistical difficulties of negotiating between India and the United States, negotiations had typically continued beyond the contractual six-month time limit for arbitration.
 
 
 5
 After considering the parties' arguments on the time bar issue, the arbitration panel--without setting forth its reasoning--notified the parties in a letter dated February 27, 1986 that the claims were not time-barred, and that the panel would hear the parties' arguments on the merits. In a letter dated February 3, 1987, the American Arbitration Association notified the parties that their briefs on the merits had been received. The panel informed the parties in a letter dated March 27, 1987 that the hearings were officially closed as of March 23, and that the award would issue within thirty days thereafter. On April 13, 1987, the arbitrators awarded Cargill the lump sum of $156,846.69, plus interest, on Cargill's original claim of $186,333.02. The arbitrators' decision did not set forth any rationale for the size of the award, and did not specify the carrying charges due on each of the five disputed deliveries.
 
 
 6
 On July 14, 1987, India commenced an action in the United States District Court for the Southern District of New York, pursuant to 9 U.S.C. Secs. 10, 12 (1982), seeking to vacate the award. As mentioned, India's opposition to the award was based on three grounds: 1) that Cargill's demand for arbitration was time-barred, and that the arbitrators exceeded their authority by allowing the arbitration to go forward; 2) that the arbitrators exceeded their authority under the Grain Arbitration Rules by failing to render an award within thirty days of the filing of the parties' briefs; and 3) that the lump sum award was too indefinite to be enforceable.
 
 DISCUSSION
 I. The Time Bar to Arbitration
 
 7
 We turn first to India's claim that, because Cargill did not demand arbitration within six months after the grain was loaded, the dispute was not arbitrable under the terms of the contract. India's challenge to the arbitrators' finding on this issue breaks down into two sub-questions: first, did the arbitrators act within their powers when, in effect, they held that the time-bar issue was itself arbitrable; and, second, did the arbitrators manifestly disregard the law when they ruled that Cargill's claim was not time-barred.A. The Arbitrability of the Time-Bar Question
 
 
 8
 We begin by noting that the arbitrability of a contractual issue is, ultimately, a question reserved to the courts. See AT & T Technologies, Inc. v. Communications Workers, 475 U.S. 643, 649, 106 S.Ct. 1415, 1418-19, 89 L.Ed.2d 648 (1986). In fixing the boundaries of the arbitrator's authority, however, a court must recognize a strong presumption in favor of arbitrability. See, e.g., id. at 650, 106 S.Ct. at 1419. As the Supreme Court noted:
 
 
 9
 The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.
 
 
 10
 Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983) (emphasis added).
 
 
 11
 Ruling more specifically on this very question, this court has held that "the validity of time-bar defenses to the enforcement of arbitration agreements should generally be determined by the arbitrator rather than the court." Conticommodity Servs. Inc. v. Philipp & Lion, 613 F.2d 1222, 1225 (2d Cir.1980) (expressly distinguishing earlier, ambiguous cases).
 
 
 12
 We decline to find that this is one of those rare instances when only a court should have passed on the time-bar question. The parties' agreement to arbitrate was sufficiently broad to encompass the question of the time bar. See Concourse Village, Inc. v. Local 32E, Service Employees Int'l Union, 822 F.2d 302, 305 (2d Cir.1987). Resolving, as we must, any doubts in favor of finding an issue to be within the arbitration clause, see, e.g., AT & T Technologies, 475 U.S. at 650, 106 S.Ct. at 1419 (citing United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582-83, 80 S.Ct. 1347, 1352-53, 4 L.Ed.2d 1409 (1960)), we hold that the question of the time-bar was properly arbitrable.
 
 
 13
 B. The Arbitrators' Finding That the Claim Was Not Time-Barred
 
 
 14
 India next argues that the arbitrators, by finding that Cargill was not time-barred from bringing its claim, grossly exceeded their powers under the contract. Our standard of review of the arbitrators' decision is, however, quite deferential: to vacate here, we would have to find that the arbitrators manifestly disregarded the law in reaching their decision. See Wilko v. Swan, 346 U.S. 427, 436, 74 S.Ct. 182, 187, 98 L.Ed. 168 (1953); Sperry Int'l Trade, Inc. v. Government of Israel, 689 F.2d 301, 304-05 (2d Cir.1982); Office of Supply, Gov't of the Republic of Korea v. New York Navigation Co., 469 F.2d 377, 380 (2d Cir.1972). This is, of course, a "severely limited" standard of judicial review. See, e.g., Saxis S.S. Co. v. Multifacs Int'l Traders, Inc., 375 F.2d 577, 582 (2d Cir.1967). To constitute "manifest disregard," the arbitrators' error must have been readily obvious, see Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bobker, 808 F.2d 930, 933 (2d Cir.1986), and the arbitrators, though recognizing the correct rule, must have nevertheless chosen to ignore that rule of law. Id.
 
 
 15
 Applying this deferential standard, we cannot say here that the arbitrators manifestly disregarded the law by finding in Cargill's favor. On the record, there were more than sufficient grounds on which the arbitrators could have based their finding that Cargill's claim was not time-barred. Cf. New York Navigation, 469 F.2d at 380 (within arbitrators' discretion to find that time bar was waived or modified by the parties to a contract). The delays that regularly marked the parties' negotiations of claims, and the broad language of the contracts--which required only that "remedial proceedings" be initiated within six months--supported the arbitrators' conclusion that these claims were not time-barred. Since these factors militated against a strict construction of the contractual time limit, the arbitrators' finding that the claim was not time-barred fell far short of the "manifest infidelity to what the arbitrators [knew] to be the law, but deliberately disregard[ed]" standard necessary to constitute manifest disregard of the law. San Martine Compania De Navegacion, S.A. v. Saguenay Terminals Ltd., 293 F.2d 796, 801 (9th Cir.1961); see Bobker, 808 F.2d at 933. For us to apply a stricter scrutiny to the arbitrators' findings "would be to undermine our well established deference to arbitration as a favored method of settling disputes when agreed to by the parties." Bobker, 808 F.2d at 933; see Shearson/American Express v. McMahon, 482 U.S. 220, 107 S.Ct. 2332, 2337, 96 L.Ed.2d 185 (1987) (noting the federal policy favoring arbitration). Therefore, we are not persuaded by appellant's argument that the arbitrators' decision regarding the time bar reflected a manifest disregard of the law.
 
 II. Timeliness of the Award
 
 16
 India next challenges the award on the ground that it was not made within the time limit set by the Grain Arbitration Rules. Rule 33 states that the award "shall be made ... no later than 30 days from the date of closing the hearings." India argues that, because briefs were filed in this case, the hearings before the arbitration panel, per Rule 27 of the Grain Arbitration Rules, technically closed on February 3, 1987, when the arbitrators acknowledged receipt of the parties' briefs on the merits. On March 27, however, the arbitration panel notified the parties that the hearings had closed as of four days earlier, March 23. The arbitrators thus in effect extended their deadline to April 22, which they met by filing their award on April 13. No objection was made by India.
 
 
 17
 India argues now that the arbitrators did not have the power to extend their deadline. India therefore claims that the award was late and thus was invalid. That argument fails because the arbitrators' decision to delay was within the scope of their power under the contract and the Grain Arbitration Rules, and because India has failed to show any prejudice attributable to the arbitrators' delay.
 
 
 18
 A. The Delay Was Within the Arbitrators' Discretion
 
 
 19
 As this court has consistently held, "any limitation upon the time in which an arbitrator can render his award [should] be a directory limitation, not a mandatory one." West Rock Lodge No. 2120, Int'l Ass'n of Machinists v. Geometric Tool Co., 406 F.2d 284, 286 (2d Cir.1968). It cannot be gainsaid that an arbitrator's decision must be made within a reasonable time, see Koch Oil, S.A. v. Transocean Gulf Oil Co., 751 F.2d 551, 554 (2d Cir.1985), and a belated award will be invalid if the parties' "agreement itself makes the deadline [for filing the award] jurisdictional," Hill v. Norfolk & W. Ry. Co., 814 F.2d 1192, 1199 (7th Cir.1987) (citing, inter alia, West Rock Lodge ).
 
 
 20
 Of importance herein, Rule 46 of the Grain Arbitration Rules gives arbitrators the power to "interpret and apply" the Rules. Moreover, even if the arbitrators' decision to delay issuance of the award had been beyond their discretion under Rule 46, Rule 30 states that a party that proceeds in an arbitration knowing that a provision of the Rules has been violated, without protesting, waives any right to object. India failed to object to any delay during the proceedings. Since the arbitrators' delay did not constitute a cognizable breach of the Grain Arbitration Rules, and was not unreasonably protracted, we conclude that the delay did not invalidate the award.
 
 B. No Showing of Prejudice
 
 21
 Furthermore, India has also failed to show that it suffered prejudice as a result of delay. As we have noted, "[b]ecause of the strong federal policy in favor of arbitration, a party must demonstrate prejudice before it can defeat efforts to resolve a dispute through arbitration." Graphic Scanning Corp. v. Yampol, 850 F.2d 131, 133 (2d Cir.1988) (citation omitted). As this court held in West Rock Lodge, it is within a court's discretion
 
 
 22
 to uphold a late award if no objection to the delay has been made prior to the rendition of the award or there is no showing that actual harm to the losing party was caused by the delay.
 
 
 23
 406 F.2d at 286. Since India has failed to show that it suffered any such prejudice attributable to the delay, and since India did not object to the delay during the arbitration itself, we hold that the delay in this instance did not invalidate the award.
 
 III. The Propriety of the Lump-Sum Award
 
 24
 Finally, India argues that the arbitrators' award, because it was simply for a lump sum amount, should be vacated as too indefinite. We start from the well-settled proposition that
 
 
 25
 arbitrators may render a lump sum award without disclosing their rationale for it, and that when they do, courts will not inquire into the basis of the award unless they believe that the arbitrators rendered it in "manifest disregard" of the law or unless the facts of the case fail to support it.
 
 
 26
 Koch Oil, 751 F.2d at 554; see Ballantine Books, Inc. v. Capital Distrib. Co., 302 F.2d 17, 22 (2d Cir.1962) ("[I]t is not for a reviewing court to look behind a lump-sum arbitration award.").
 
 
 27
 The arbitrators' award herein reflected no disregard--manifest or otherwise--of the law. India, in fact, does not seem to challenge the substance of the award itself. Instead, India argues that the form of the award was improper, because the arbitrators failed to indicate which of the five invoices for carrying charges were being addressed. India now claims that it will be nearly impossible for it to recover against the five ships whose delay caused India to incur those carrying charges, since India's claims against the individual ships will be indefinite because of the arbitrators' lump-sum award to Cargill.
 
 
 28
 This contention is without merit, since, as was acknowledged at oral argument, India never asked the arbitrators to differentiate in the first instance among Cargill's five claims. The burden rests with the party seeking an itemized award to request one from the arbitrator; if that party fails to do so, this court will not invalidate a lump-sum award absent a showing that the form of the award was in manifest disregard of settled law, or that there was no support in the facts of the case for a lump-sum award. See Koch Oil, 751 F.2d at 554. India has failed to make such a showing.
 
 CONCLUSION
 
 29
 For these reasons, and substantially the reasons stated by the district court, the judgment is affirmed. Per Federal Rule of Appellate Procedure 39(a), costs shall be taxed against appellant Government of India. We decline, however, to award further sanctions against appellant. We recognize that allowing losing parties to raise hypertechnical objections threatens to undermine the flexible efficiency of the arbitration system itself. See West Rock Lodge, 406 F.2d at 286. In light of the unique circumstances of this case, however, appellee Cargill's request for the award of double costs and attorney's fees against appellant is denied.