937 F.2d 608
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Charles E. KENNEDY, Isaac Ford, Troy Aiken, Ben Burrell,
Plaintiffs-Appellees,
v.
UNIROYAL PENSION PLAN, Defendant-Appellant.
 Nos. 90-1705, 90-2048, 90-1983 and 90-2110.
 United States Court of Appeals, Sixth Circuit.
 July 23, 1991.
 
 Before NATHANIEL R. JONES and ALAN E. NORRIS, Circuit Judges, and LIVELY, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 The plaintiffs in this case were union members covered by a pension plan, which was administered by a pension board. The pension board disapproved plaintiffs' applications for disability retirement benefits. Six years after the plaintiffs filed suit in federal district court, and after three rounds before an arbitrator, all four plaintiffs were awarded benefits. Finding no error in the district court's handling of this prolonged matter, we affirm.
 
 
 2
 * Charles E. Kennedy, Isaac Ford, Troy Aiken, and Ben Burrell ("plaintiffs") were hourly employees at the now-defunct Uniroyal Tire Plant in Detroit. Plaintiffs were union members covered by a collective bargaining agreement (CBA) and the Uniroyal Retirement Plan ("the plan"). The CBA established the seven-member Uniroyal Pension Plan Board of Benefits and Awards ("the Board") to administer and implement the pension plan. In March 1980, Uniroyal announced the closing of the plant, and on July 22, 1981 the plant permanently closed. Following the plant closing, plaintiffs applied for disability pension benefits pursuant to the Employee Retirement Income Security Act (ERISA), 29 U.S.C. Sec. 1101 et seq. The Board denied plaintiffs' application. On September 4, 1984, Kennedy, Ford, and Aiken filed suit against the Board in the U.S. District Court for the Eastern District of Michigan. Ben Burrell was added as a plaintiff in January 1985.
 
 
 3
 Given the extremely complicated procedural history of this case, a chronological description of the various orders by the district court, as well as the three arbitration decisions, follows.
 
 
 4
 1. Sinicropi I (Sept. 4, 1987)--Following the district court's voluntary dismissal in January 1987, the matter was referred to an arbitrator (named Sinicropi). The arbitrator denied the grievances because he concluded that the claimants waited too long before appealing the board's denial of benefits, and because the claimant's did not file written grievances or initially request arbitration as provided in the CBA.
 
 
 5
 2. Mar. 25, 1988 Order--The District Judge, Julian A. Cook, showed considerable displeasure at the fact that the Board based its argument before the arbitrator on the timeliness issue: "The Defendant, through its counsel, repeatedly informed the Plaintiffs and this Court that timeliness was not a problem. It is obvious to the court that, on the basis of [the lawyer for the Board's] representations, timeliness was not an issue that the parties contemplated would be placed before an arbitrator. Therefore, it is abundantly clear that the arbitrator was without jurisdiction to bar the plaintiffs' claims on this procedural ground.... Defendant's representations before this Court left the unmistakable impression that there were no time problems." J.App. at 38-39, 41-42 (emphasis in original). The district court signed the voluntary dismissal order on the assumption that the arbitrator would address the merits, and "would never have signed the Order ... if it knew, or had reason to know, that the Defendant thought the issue not to be arbitrable." J.App. at 42. Based on its determination that the arbitrator lacked authority to address the jurisdictional issue, the district court sent the case back to the arbitrator for resolution of the merits. The district court also sanctioned the Board by enjoining it from objecting to any award made by the arbitrator on timeliness grounds.
 
 
 6
 3. Sinicropi II (Feb. 7, 1989)--On remand, the arbitrator applied the arbitrary and capricious standard, based on Varhola v. Doe, 820 F.2d 809, 811 (6th Cir.1987) ("We hold that the 'arbitrary and capricious' standard of review applies to decisions by [ERISA] plan administrators to deny benefits to particular claimants."). The arbitrator found that the Board's decision with respect to Aiken was arbitrary because the board "failed to identify any light duty positions within the bargaining unit that Aiken could perform." J.App. at 374. The arbitrator concluded that Ford was properly denied a pension because Ford was able to perform light work, he was only laid off because he lacked seniority, and because the record was "devoid of any credible medical evidence with respect to the condition of Ford." J.App. at 374. Finally, the arbitrator sustained Kennedy's application, finding that Board's denial of benefits was arbitrary because (1) the award of benefits under the pension plan does not depend on whether the disability was job related, and the board incorrectly found that Kennedy was not disabled because his disability was not job related, (2) the medical evidence indicated Kennedy was totally disabled at the time he was laid off, and Uniroyal provided no evidence it could have accommodated his restrictions; and (3) "the Board acted arbitrarily and capriciously in denying Kennedy the opportunity to be examined by a third physician." J.App. at 376-77. The arbitrator accordingly directed the parties to determine the appropriate amount of disability pension benefits for Aiken and Kennedy.
 
 
 7
 4. June 30, 1989 Order--In this order, the district court: (1) granted plaintiffs' motion for summary judgment in favor of Kennedy and Aiken, and denied the motion with respect to Ford; (2) ordered the enforcement of Sinicropi II ; (3) remanded the Ford case back to the arbitrator for reconsideration in light of evidence not originally considered; and (4) denied the board's motion to vacate Sinicropi II.
 
 
 8
 5. Sinicropi III (Oct. 25, 1989)--This final round of arbitration was concerned solely with Ford's claim. The arbitrator found that "the procedures established in the Pension Plan were not followed, in that, the Board should have utilized a third physician to resolve the conflict in the medical evidence." J.App. at 487. The arbitrator directed the parties to select a third physician to determine whether Ford was totally and permanently disabled from his light duty position as of July 1981.
 
 
 9
 6. May 29, 1990 Order--The district court reversed the arbitrator's determination that Ford's case should be sent to third physician. Judge Cook found that a third physician was not needed because the Board's own physician had determined that Ford was disabled; therefore, there was no dispute to resolve. Judge Cook then referred Ford's case to a federal magistrate for a determination of benefits, while expressing displeasure at the arbitrator's handling of the matter: "it does not appear that arbitration has proved to be an efficient method of resolving this dispute, as originally hoped." J.App. at 61.
 
 
 10
 The district court also addressed the board's argument that it was not required to comply with the June 30, 1989 Order, granting summary judgment for Aiken and Kennedy, because there had been no final resolution of the merits under Fed.R.Civ.P. 54(b). Rule 54(b) provides that if a court resolves one of several claims made by a party, "the court may direct entry of a final judgment as to ... fewer than all of the claims ... only upon an express determination that there is no just reason for delay." The Board argued that the district court had not made an express finding of "no just reason for delay". The district court, however, ordered enforcement of its order because (1) "even if the technical requirements of Rule 54(b) are not met, a district court's entry of a final judgment in a case should be sufficient," and (2) the Board was aware of the finality of the summary judgment in favor of Kennedy and Aiken because it appealed the order to the Sixth Circuit. J.App. at 64-65.
 
 
 11
 The district court also awarded attorney fees to Burrell and Ford based on the "pattern of bad faith shown by Defendants in this case." J.App. at 66. Kennedy and Aiken's request for attorney fees was denied because their request was not submitted until more than thirty days after the judgment was entered on June 30, 1989. In addition, the court granted the Board's summary judgment motion on plaintiffs' claim for emotional distress damages under ERISA. Finally, the district court granted summary judgment in favor of Burrell, and referred the case to a magistrate for a determination of damages.
 
 
 12
 6. August 20, 1990 Order--Judge Cook first determined that he incorrectly denied Kennedy and Aiken's request for attorney fees in the May 29 Order. The earlier denial was reversed because "Kennedy and Aiken did make their request for attorney fees prior to the issuance of a final judgment on their claims[.]" J.App. at 75. The district court also awarded prejudgment interest to all plaintiffs based on the Board's bad faith in (1) objecting to arbitration after stipulating to it before the district court, and (2) denying the pension applications when "there was no medical dispute that they were entitled to disability benefits." J.App. at 76. Finally, Rule 11 sanctions were found not to be warranted.
 
 
 13
 7. Oct. 2, 1990 Order--In this order, the district court denied the Board's motion to approve supersedeas bond and stay enforcement of all monetary judgment during appeal. The Board based its motion on Fed.R.Civ.P. 62(d), which provides that "[w]hen an appeal is taken the appellant by giving a supersedeas bond may obtain a stay[.]" The court's reasons for denying the stay were (1) the Board's appeal with respect to Kennedy and Aiken was not timely, (2) the amount of the bond offered by the board, $170,000.00, was "facially insufficient" in that plaintiffs had requested $158,000.00 in attorney fees alone, and (3) the equitable remedies awarded (medical insurance) could not be stayed pending appeal.
 
 
 14
 The Board has filed timely notices of appeal with respect to all issues raised in this case.
 
 II
 
 15
 The Board's argument that the district court should not have vacated Sinicropi I has two aspects. The board contends that it never waived the timeliness issue or misled the district court. This contention involves a distinction between the arbitrability of the dispute and the procedural defense of timeliness. Just because the merits of the dispute could be put before an arbitrator at any time, argues the Board, does not mean that the timeliness issue could not be put before the same arbitrator. The Board also emphasizes a January 15, 1987 letter sent to plaintiffs' counsel which expressed the Board's intention to argue arbitrability before the arbitrator. The district court, however, did not credit the letter as relevant because the Board never gave the district court a copy of the letter, never tried to correct the earlier misrepresentations, or inform the court of the change in position.
 
 
 16
 Central to the Board's argument is the proposition that the district court's powers of review were circumscribed because the plaintiffs were required to submit any disputes to arbitration.
 
 
 17
 [I]f any dispute shall arise between the Company, or its Board of Benefits and Awards [sic], and any Employee or former Employee represented by the Union as to whom the Pension Plan shall be applicable ... such dispute may be taken up as a grievance ... beginning with the step next preceding arbitration; if any such grievance shall be appealed to arbitration[.]
 
 
 18
 J.App. at 137 (quoting Pension Plan) (emphasis added). The Board interprets this provision to be a "clear arbitration provision ... which was binding on the parties[.] Brief of Appellant at 14.
 
 
 19
 The letters of the Board's counsel to the district court, in addition to suggesting that timeliness was not a problem, described arbitration as an "option". In an April 28, 1986 letter, the board stated that "the arbitration procedures defined in the Pension Plan do remain available." J.App. at 34. At a hearing before a magistrate on July 10, 1986, counsel for the Board stated that "[t]here were no time limits in the arbitration clause ... arbitration was available--[an] available option for the Plaintiffs which they've now taken." J.App. at 35. The district court's order of voluntary dismissal stated that the parties had "stipulated to submit the Plaintiffs' claims challenging the denial of their requests for disability pensions to binding arbitration[.]" J.App. at 36.
 
 
 20
 The Board's analysis is clouded by a questionable legal assumption. The Board's brief states that "it was for Arbitrator Sinicropi to decide the arbitrability issue." Brief of Appellant at 15. In the AT & T case, however, the Supreme Court stated the opposite:
 
 
 21
 '[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.' This axiom recognizes the fact that arbitrators derive their authority to resolve disputes only because the parties have agreed in advance to submit such grievances to arbitration.
 
 
 22
 The second rule, which follows inexorably from the first, is that the question of arbitrability--whether a collective-bargaining agreement creates a duty for the parties to arbitrate the particular grievance--is undeniably a question for judicial determination. Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator.
 
 
 23
 AT & T Tech., Inc. v. Communications Workers, 106 S.Ct. 1415, 1418 (1986) (citations omitted) (emphasis added).
 
 
 24
 This is not a case in which both parties have agreed that all disputed issues should be submitted to an arbitrator. The Board also seems to assume that the pension plan and CBA contain ironclad duties on both parties to arbitrate. This assumption, however, is contradicted by the language of the plan and the district court's findings. Thus, the district court was entitled to phrase the question submitted to the arbitrator in the voluntary dismissal order as involving resolution of the merits of the disability issue.
 
 
 25
 The situation in this case is thus much different from Vic Wertz Distributing v. Teamsters Local 1038, 898 F.2d 1136, 1140 (6th Cir.1990) (citations omitted), where the parties affirmatively submitted the arbitrability issue to the arbitrator. In Vic Wertz, this court concluded that:
 
 
 26
 Because the parties "clearly and unmistakably" submitted the issue of arbitrability to the arbitrator without reservation, we will review the arbitrator's decision on arbitrability under the same deferential standard employed when reviewing an arbitrator's decision on the merits. Therefore, the arbitrator's decision on arbitrability will be affirmed "unless it fails to 'draw its essence from the collective bargaining agreement.' "
 
 
 27
 The board is correct in arguing that, in most instances, an arbitrator may consider the timeliness of a dispute. Matter of Arbitration No. AAA13-161-0511-85, 867 F.2d 130, 133 (2d Cir.1989) (" '[T]he validity of time-bar defenses to the enforcement of arbitration agreements should generally be determined by the arbitrator rather than the court.' "); Stroh Container Co. v. Delphi Industries, Inc., 783 F.2d 743, 748 (8th Cir.), cert. denied, 476 U.S. 1141 (1986). In this case, however, the general rule that the arbitrator may rule on timeliness is undermined by the fact that the district court was not aware timeliness would be argued, and granted the order of voluntary dismissal on the assumption that the arbitrator would address only the merits. The Tenth Circuit has stated that "[t]he narrow judicial inquiry is limited to determining whether the parties committed a particular dispute to arbitration." Denhardt v. Trailways, Inc., 767 F.2d 687, 689 (10th Cir.1985) (allowing arbitrator to address procedural issues because "we find no evidence of any purpose to exclude procedural disputes from arbitration."). See also I.S. Joseph Co., Inc. v. Michigan Sugar Co., 803 F.2d 396, 399 (8th Cir.1986) ("[A]ny power that the arbitrator has to resolve the dispute must find its source in a real agreement between the parties. He has no independent source of jurisdiction apart from the consent of the parties.").
 
 
 28
 We conclude that the district court correctly vacated Sinicropi I because: (1) the district court and plaintiffs did not intend for the arbitrator to address timeliness, and (2) the Board strongly inferred to the district court that timeliness would not be a bar to arbitration of the dispute. Thus, this case presents "one of those rare instances when only a court should have passed on the time-bar question." Matter of Arbitration, 867 F.2d at 133. See also Robbins v. Chipman Trucking, Inc., 866 F.2d 899 (7th Cir.1988) (timeliness of employer's arbitration request was for district court rather than arbitrator; despite strong policy favoring arbitration; if question of whether arbitration had been waived remained question for arbitrator to resolve, employers could ignore time limit for initiating arbitration and then move to dismiss subsequent suit).
 
 III
 
 29
 The Board next argues that the district court should have vacated the arbitrator's award of benefits to Kennedy and Aiken in Sinicropi II. As a jurisdictional matter, plaintiffs argue that the Board's appeal of the award of benefits to Kennedy and Aiken is untimely because the June 1989 Order awarding benefits was an appealable and final order under Rule 54(d). We decline to address the Rule 54(b) appealability issue, however, given our conclusion that the district court correctly granted summary judgment for Kennedy and Aiken in June 1989.
 
 
 30
 "The standard of review in arbitration cases is narrow. Indeed, an arbitrator's decision should be upheld unless it fails to 'draw its essence from the collective bargaining agreement.' " Eberhard Foods, Inc. v. Handy, 868 F.2d 890, 891 (6th Cir.1989) (citation omitted). See also Federated Dep't Stores v. J.V.B. Industries, 894 F.2d 862, 866 (6th Cir.1990) ("[T]he burden of proving that the arbitrators exceeded their powers is very great.... Arbitrators do not exceed their authority unless they display a manifest disregard of the law.").
 
 
 31
 The Board argues that the arbitrator erred in awarding Aiken benefits because the third physician, required by the plan in the event of a conflict, determined that Aiken "could do restricted work and is not totally disabled." The arbitrator conceded that this finding "on its face" was binding on the Board, but reversed the denial of benefits because the Board "failed to identify any light duty positions within the bargaining unit that Aiken could perform. That is, an employee is not considered disabled if he can perform a specific position." J.App. at 374. The Board now argues that the arbitrator improperly altered the pension plan. Given that the third physician also found that Aiken was "no longer physically able to fulfill the requirements of his job within the meaning of the Pension Plan", we conclude that the arbitrator was correct in concluding that the Board was arbitrary and capricious to deny benefits without identifying positions Aiken could perform. Considering that the Plan defines "disabled" as "no longer able to meet the requirements of his job", disability should be ascertained in relation to a specific job.
 
 
 32
 The arbitrator awarded benefits to Kennedy because under the plan it is irrelevant whether a disability is job-related or not, and because the medical evidence indicated Kennedy was totally disabled at the time he was laid off. The Board now argues that Kennedy's award should be reversed because Kennedy's initial application for benefits was filed after his last day of employment. This argument is without merit, however, because the arbitrator found that Kennedy's date of application was not a factor in the Board's initial denial of benefits. In addition, the Board does not point to any provision of the plan which explicitly states that only active employees, who submit applications while still employed, may apply for benefits.
 
 
 33
 The Board also argues that the arbitrator made a material mistake of fact in finding Kennedy disabled as of his last date of employment. The Board argues that Kennedy could not have been disabled on his last day of employment because he worked on his last day of employment. Kennedy was employed until June 1981. In September 1981, Kennedy was examined by a physician who diagnosed pneumoconiosis and concluded that "Kennedy was suffering from his disabling lung condition at the time he was separated from his employment." J.App. at 376. The arbitrator then awarded benefits because the Board did not "rebut the medical evidence that Kennedy's lung disorder was disabling at the time he was separated[.]" Id. We agree that the Board has failed to rebut the proffered medical evidence of disability, and therefore affirm the award of benefits as to Kennedy.
 
 IV
 
 34
 The arbitrator issued Sinicropi III on October 25, 1989, and Ford filed his motion to vacate on March 19, 1990. The board argues that Ford's motion was untimely because it was beyond the ninety day limitations period applied to motions to vacate arbitration awards prescribed in Occidental Chemical v. Int'l Chemical Wkrs. Union, 853 F.2d 1310, 1316 (6th Cir.1988). We decline, however, to apply Occidental Chemical in the manner suggested by the Board. First, in Occidental Chemical an employer filed suit in federal court five months after an arbitrator had ruled in favor of an employee. This court found that the three month period found in the United States Arbitration Act (USAA) governed the timeliness of the employer's motion to vacate, and affirmed the dismissal of the suit as untimely. Id. at 1311. In the instant case, however, the plaintiffs initially filed suit in federal court and the matter was not voluntarily submitted to arbitration pursuant to the direction of the district court until more than two years later. As the arbitrator stated, "[t]his matter has a background unique to labor arbitration." J.App. at 250. Given this unusual procedural posture, we hesitate to apply Occidental Chemical. As the applicability of the USAA to labor arbitration as a general matter is far from clear,[1] we find it prudent to decline to apply the USAA's statute of limitations period to a case such as this one. Thus, Ford's motion to vacate the arbitrator's award was not untimely.
 
 
 35
 With respect to the district court's disposition of Ford's claim, the Board argues that the district court erred in vacating Sinicropi III and independently ruling on Ford's claim. The arbitrator in Sinicropi III directed the parties to seek a third physician to determine Ford's disability because it found that there was a conflict between Ford's physician and the board's physician. The district court, however, found that, because the Board's own physician had found Ford to be disabled, "there was no disagreement between the two doctors to be resolved by a third physician." J.App. at 61. Thus, the district court did not simply disagree with a factual finding by the arbitrator, the district court, in effect, found that the arbitrator's determination violated the provisions of the plan because the plan authorized referral to a third physician only in the event of a disagreement between the parties' physicians. Thus, the district court's vacation of Sinicropi III was proper.
 
 V
 
 36
 The district court granted plaintiffs' motion for attorney fees. In reviewing the district court's grant of attorney fees against a party under ERISA, this court is obligated to consider, among other factors, the degree of bad faith. Central States Pension Fund v. 888 Corp., 813 F.2d 760, 767 (6th Cir.1987). Based on the district court's finding of a "pattern of bad faith shown by the Defendants", j. app. at 66, we find that the district court did not abuse its discretion in awarding attorney fees.
 
 
 37
 The Board also objects to the award of prejudgment interest. The board concedes that "in the absence of bad faith or ill will, courts will not award prejudgment interest." Brief of Appellant at 45. As we are in agreement with the district court's finding of bad faith on the part of the Board, we affirm the award of prejudgment interest.
 
 
 38
 In its October 2, 1990 order, the district court denied the Board's motion to approve a supersedeas bond. Fed.R.Civ.P. 62(d) permits a district court's judgment to be stayed pending appeal upon the filing of a supersedeas bond. The Board has moved this court to reverse the district court and approve a supersedeas bond of $170,000.00 and stay enforcement of the judgment pending appeal. The district court denied the motion because (1) the $170,000.00 figure would be inadequate to satisfy the judgment, (2) the award of medical benefits is an equitable award which cannot be stayed pending appeal, and (3) the denial of medical benefits pending appeal would irreparably harm the plaintiffs. We believe that the Board has not met its burden of proving that the district court's denial of a supersedeas bond was an abuse of discretion.
 
 VI
 
 39
 For the reasons stated above, the judgment of the district court is AFFIRMED.
 
 
 
 [1]
 Six Circuits "have refused to apply the USAA in the labor law context. The legislative history of the USAA makes it clear that the USAA was intended to govern only commercial arbitration and that labor matters were expressly excluded. Accordingly, almost without exception, the other circuits have adhered to the express language of the USAA and have refrained from 'simply invent[ing] by judicial decree, a statute of limitations where Congress has failed to do so." Occidental Chemical, 853 F.2d at 1318 (Krupansky, J., dissenting) (citations omitted)